THE PEOPLE ex rel. SAMUEL FREEMAN and JOHN H. WHITE, Appellants, *v.* JOHN C. HULBURT, County Judge, etc., Respondent.

The authority of the majority of the tax-payers of a town, to mortgage the whole property of its citizens, against the will of the minority, for investment in a railroad or other corporation, receives no countenance in the principles of the common-law, but is derived solely from legislative enactments. Every step, therefore, required by the statute, must be shown to have been taken in strict conformity therewith.

In proceedings under chapter 907, Laws of 1869, it must appear, either that the tax-payers whose names appear on the petition, who did not sign personally, were present when their names were signed, or authority in writing so to affix their names must be produced.

As it was requisite to establish the fact of the signing to give jurisdiction, it is no answer, that the objection was not taken upon the hearing before the county judge. There was no waiver upon the part of those tax-payers, who did not sign and who did not appear.

Where one signs the petition in a representative capacity, his authority to represent and thus to bind the estate of his ward or *cestui que trust* must be shown affirmatively by legal evidence. (See opinion of POTTER, J., note.)

Where the name of a corporation appears to the petition, its corporate existence, the authority of those signing, to bind it in this manner, and that the corporation is *solvent*, must be proven. (Opinion of POTTER, J., note).

(Submitted June 12, 1871; decided September 2, 1871.)

APPEAL from judgment of the General Term, third depart-
ment, affirming order of county judge of Saratoga county,
appointing commissioners, etc., under the provisions of chap-
ter 907, Laws of 1869, brought up for review upon writ of
certiorari. (Reported below 59 Barb., 446.)

On the 31st day of August, 1870, George S. Batcheller and
others, presented their petition to Hon. J. C. Hulbert, county
judge of Saratoga county, praying that the "bonds of the
town of Saratoga Springs, may be created and issued in the
manner specified" in chapter 907, Session Laws of 1869, to
the amount of $100,000, and that the said bonds or proceeds
thereof, might be invested in the capital stock of the Saratoga,
Schuylerville and Hoosac Tunnel Railroad Company, etc.;
which petition was verified.

In pursuance of said petition, said county judge made an
order appointing September 20, 1870, to take proof of the
facts set forth in the petition.

The county judge, upon such petition, made an order
appointing Henry W. Merrill, Aaron B. Olmstead, and
Edward R. Stevens, commissioners for the town in said pro-
ceedings.

A number of persons signed said petition in a representa-
tive capacity; no evidence was introduced, showing their
right to represent, or their authority to sign in their assumed
capacity. The names of several corporations appeared to the
petition, and the names of petitioners were signed by others
in several instances. These facts appear fully in the opinion
of POTTER, J., in note.

The aggregate of property on assessment roll, was $2,318,-
170; the amount assessed to the tax-payers whose names
appeared to petition, $1,189,394. Deducting amount claimed
to be erroneous, $38,024, the petitioners lacked $7,715 of a
majority of the taxable property, as appears upon the roll of
1869.

*L: Varney*, for appellants. The petition was not in
accordance with chapter 907, Laws 1869, section 1. (*Robert-*

*son* v. *Bullions,* 1 Kern., 243.) Statutes like this must be strictly construed. (*Sharp* v. *Spier,* 4 Hill, 76; *Striker* v. *Kelly,* 2 Denio, 323; *Doughty* v. *Hope,* 3 id., 594; 1 N. Y., 79; *Adams* v. *S. and W. R. R. Co.,* 10 id., 330; *Cruger* v. *Daughtery,* Ct. App., Dec. Term, 1870.) The authority to sign the petition must be shown. (6 How. Pr., 98; 9 Johns., 75, 76; 10 id., 114; id., 167.) This court may correct any error of law or fact of an inferior tribunal. (*People* v. *Board of Police,* 39 N. Y., 506; id., 88; *People* v. *Van Alstyne,* 32 Barb., 134; *People* v. *Overseers Ontario,* 15 id., 286, 293; *People* v. *Lawrence,* 54 id., 589; chap. 925, Laws 1871.) The proceedings being statutory, the parties must show their authority for every step taken. (*Norwood* v. *Hollister,* 6 N. Y., 309; *Bodine* v. *Goodwin,* 5 id., 568; *Farrington* v. *Morgan,* 20 Wend., 207.) The return should sustain the proceedings. (*People ex rel. Waldron* v. *Soper,* 3 Seld., 428.) The county judge, being a petitioner as well as a trustee, was disqualified from adjudicating upon the petition. (2 R. S., 463, § 2, 4th ed.; *Oakley* v. *Aspinwall,* 3 Comst., 550; 28 Barb., 503; 17 id., 414; id., 410; 41 id., 200, cases cited; *In the Matter of the Petition of Leefe and Wife,* 2 Barb. Ch., 39; id., 331; *Washington Ins. Co.* v. *Price,* 1 Hopk. Ch., 21; *Sweet* v. *Hulbert,* 51 Barb., 315; *Baldwin* v. *McArthur,* 17 id., 414.)

*Batcheller & Hill,* for respondent. Presumptions are in affirmance of the judgment, and errors must be shown affirmatively. (*Boyen* v. *Schofield,* 2 Keyes, 628; *Hoyt* v. *Thompson,* 1 Seld., 335; *Bank of Vergennes* v. *Warren,* 7 Hill, 95.) The statute authorizes those representing property, as guardians, trustees, and executors, to sign petition. (2 R. S., part 2, chap. 8, tit. 3, § 20; *Field* v. *Schiefelin,* 7 Johns. Ch., 154; *Holmes* v. *Seely,* 17 Wend., 75–78; *Sylvester* v. *Ralston,* 31 Barb., 289.) The act under which the proceedings were had is constitutional and valid. (*Bank of Rome* v. *Village of Rome,* 18 N. Y., 39; *Starrin* v. *The Town of Genoa,* 23 id., 439; id., 456; 35 id., 555.) The county judge had juris-

diction. (*Bank of Lansingburgh* v. *McKie*, 7 How., 369; *People* v. *Wheeler*, 21 N. Y., 86; Clark's Ch., 190, Moak's ed. and note; *People* v. *Edmunds*; 15 Barb., 530; 17 Barb., 424; 5 Paige, 489; 2 Barb. Ch., 38.) The act should receive a liberal construction. (Smith's Com. on Const. and Stat. Law, § 467; *Whitney* v. *Emmett*, 1 Baldw., 303.)

CHURCH, Ch. J. The authority of a majority of the tax-payers of a town, to mortgage the whole property of its citizens, against the will of the minority, for the purpose of investment in a railroad or other corporation, is derived solely from legislative enactment, and has no countenance in the principles of the common-law, which protects every owner of property in the absolute and unqualified control of it, subject only to the right of the government, to take it by right of *eminent domain* for public use, or to tax it for governmental purposes.

Whether it is competent for the legislature, thus to interfere with the rights of property of the citizen, has been the subject of serious controversy in the legislature and in the courts, but which it is unnecessary to consider in this case. It is well settled upon elementary principles and by repeated adjudications, that when private property is sought to be taken or affected under statutory proceedings, every step required to confer the power, must be shown to have been taken in strict conformity to the statute. (4 Hill, 76; 2 Wend., 323; 10 N. Y., 330.) And this court has held, that this principle was applicable in this class of cases. (*People* v. *Smith*, 45 N. Y., 772.)

It was incumbent upon the petitioners, to prove by legal evidence before the county judge, that a majority of the tax-payers of the town, owning or representing a majority of the taxable property of the town appearing upon the last assessment roll, signed the petition for "bonding the town," as a condition precedent, to the exercise of the authority of the county judge, to appoint commissioners for that purpose.

We think the petitioners failed to establish this fact, for

the reasons set forth in the dissenting opinion of POTTER, J., in the Supreme Court.

With every advantage of personal solicitation, representation and influence, if a clear and undoubted majority of those entitled and qualified to act is not obtained, the extraordinary power of encumbering the whole property of the town ought not to be exercised. In addition to the reasons assigned by Judge POTTER, an examination of the papers shows, that more than $20,000 of property was included in the majority, owned by persons whose names were signed to the petition by other persons, and the only authority was by parol, proven by such persons.

This does not include the amount, in the cases where the owners were present and made their mark. The power or duty conferred upon the tax-payer is one of great importance. It affects not only his own property, but the property of others. It should be exercised by himself, and sound policy and legal analogy require, that he should either be present when his name is affixed, or the authority should be in writing. (See opinion of ALLEN, J., in *People* v. *Smith, supra.*) If this sum should be deducted, the amount would be considerable less than the sum required to constitute a majority.

It is true no objection appears to have been taken at the hearing on this ground, but it was necessary to establish all the facts requisite, to confer upon the county judge power to appoint commissioners, and there was no waiver on the part of those who did not sign the petition and did not attend the hearing. The whole proceedings are before us, and we can review any error of law or fact committed by the inferior tribunal. (39 N. Y., 506.)

It is urged by the counsel for the respondent, that the case should be sent back to the county judge for correction under the act of 1871. That act leaves it discretionary whether the case should be remanded or not. We think the proceedings should be reversed and not remanded. If there were no other reasons, it is sufficient that two years have elapsed since the assessment roll, which is made the basis of this proceeding,

was made.   There may have been great changes in the own-
ership of property during that period, and in the prospects
of the projected railway for which the bonds were to be issued.
It would be unjust to present owners, to allow former owners
to encumber their property in this manner.   The present
tax-payers should decide the question, and have an oppor-
tunity for that purpose; and this can only be done by revers-
ing the proceedings.

All concur.   Judgment for reversal of order of county
judge.

The following is the dissenting opinion of POTTER, J., below, approved
and adopted by the court: [REP.]

### SUPREME COURT—THIRD DEPARTMENT.

THE PEOPLE, ex rel. JOHN H. WHITE and others, *v.* JOHN C. HULBERT,
County Judge.

POTTER, J. (dissenting opinion.)  The act under which these proceed-
ings are instituted, authorized the devesting of individuals of their estates
by unusual methods, not known to the common-law, and not known to
general provisions of the statutes.  It is a proceeding by special statute
authority, and in derogation of the principle of the common-law.  In all
such cases jurisdiction can only be obtained by the strictest observance
of the statute authority ; nothing can be made out by intendment.  The
due execution and observance of the power granted must be shown; and
in such cases there is no presumption that public officers have done their
duty, but every step in the proceeding must be proved to be within the
powers conferred by the act.  (*Sharp* v. *Spier*, 4 Hill, 76; *Striker* v. *Kelly*,
2 Denio, 323; *Doughty* v. *Hope*, 3 id., 594; S. C., 1 N. Y. R., 79; *Adams* v.
*Saratoga and Washington R. R. Co.*, 10 N. Y. R., 330; *Cruger* v. *Dougherty*,
Court of Appeals, December term, 1870.)  I copy the following extract
from an unpublished work, soon to appear: "But it must be kept in
mind, however, that whenever, in pursuance of law, the property of an
individual is to be devested, by these proceedings against his will, there
must be a strict compliance with all the provisions of the law, which are
made for his protection and benefit.  Those provisions must be regarded
as in the nature of condition precedent, which must not only be complied
with before the right of the property owner is disturbed, but the party claim-
ing authority, under the adverse proceeding, must affirmatively show such
compliance."  So, too, it is equally a well settled rule of law, that where
a statute requires proof to be made in any proceeding, it must be by *legal
evidence ;* unless, from the language of the statute, it is intended to be by
affidavit; or where, from some qualifying language in the context, it is

apparent that the legislature intended some other method of proof than the best legal evidence. (*Buffalo and State Line R. R. Co.* v. *Reynolds*, 6 How. Pr. R., 98; *Brown* v. *Hitchman*, 9 John., 75, 76; *Terry* v. *Fargo*, 10 id., 114; id., 167.) Things to be proved must be established by competent and satisfactory *legal* evidence. (1 Greenleaf's Ev.. § 1.) It has lately been decided in the Court of Appeals, "*In the matter of the application of the Rensselaer and Saratoga R. R. Co.* v. *Davis*," (reported in the Albany Law Journal, No. 57), "that the taking of private property for public use is in derogation of private rights, and in hostility to the ordinary control of the citizen over his estate, and is not to be extended by implication. To authorize the taking of land under the right of eminent domain, the express authority must be shown." Guided by these rules in the construction of the act of 1869 (chap. 907), under which these proceedings were taken, the second section of the act makes it the duty of the judge, at the time and place named in the notice, to proceed *to take proof* as to the said allegations in said petition, etc. This means *legal proof.* What were those allegations? Among other things, they are, that the petitioners are a majority of the tax-payers, or that they represent a majority of the said tax-payers, and that they desire bonds to be issued; and bonding the town and creating a liability against the town and against the taxable property to the amount of $100,000. These were the things to be proved, and proved by legal evidence. Such legal proof, I think, was not produced before the county judge, as showed that a majority of the tax-payers and representatives of a majority of them had petitioned for the issuing of these bonds. A considerable portion of the taxable property of that municipality, to be devested, diminished, or made liable to the proposed tax or liability, belonged to infants, who were represented by guardians. The property of infants is always, and in an especial manner, under the protection of the court, and every act, calculated to affect their interests injuriously, the courts are ever jealous to regard ; and whenever the court can discover any dereliction of duty on the part of guardians or trustees of infants, they will be careful to require, at least, that all the forms of law shall be observed, and they will not allow guardians or trustees to be guilty of devastation of the estates of their wards or *cestui que trusts*, or to put them at hazard. Upon the tax roll was an assessment of $2,000 against " the Shepherd children." This was claimed as a part of the majority of the taxable property petitioning for the bonds. The authority for this petition is the signature of one "John C. Shepherd, for Shepherd children." No authority was proved. But, it is now said, that the county judge did not count this in as a part; and it is now alleged that the relators must affirmatively show that he did, in order to predicate error upon it. It is charged upon oath, that the judge · did so count this assessment as a part of the petition of the majority. The certiorari calls upon him to make return of all acts and decisions made by him, and his return entirely omits to state whether or not he did allow the said assess-

ment, and the petition thereon, to be counted with such majority. The burden of showing want of jurisdiction is not with the relators, but by the party claiming jurisdiction, to show it when called upon. It is not, therefore, with good grace that, upon such a return, the respondents should seek to cast this burden upon the relators. But, besides this, there is the evidence of Mr. Batcheller, in which he enumerates the names that were omitted, and this is not among the omissions. Another case is that of the Congregational church, whose name is upon the assessment roll "Congregational Society," but who petitioned for the issue of these bonds by the name of the "First Congregational Society," $9,400, which was signed by Doctor L. E. Whiting, Solon B. Bushnell, and Levi S. Packard, under their corporate seal, and authorized by a resolution of the board of trustees. First. There was no legal or other proof before the county judge of the existence of such a corporation as is represented by the assessment roll, tax list or signatures; and if there had been such evidence, there was no power in this board of trustees to create such a liability against the property of the corporation they represent. A religious corporation, created under the general statute, consists not of the trustees alone, but of the whole members of the society. It is the society that is incorporated, not the trustees; and its members are the corporators. The trustees are only the managing agents or officers of the corporation, in charge of the temporal affairs of the society, with powers specifically conferred by the statute; but with no other powers. They cannot alien, mortgage or encumber the estate of the corporation but by permission of the court, except to mortgage for debt, under certain circumstances. (*Robertson* v. *Bullions*, 10 N. Y. R., 343.) Their powers being specified by the statute, this specification excludes all other powers; and to devastate and create liabilities is not among the specified powers. They neither proved to the judge their corporate existence, nor any power to sign such a petition. The act of 1869 confers no new power upon them. While it allows representatives of taxable property to petition, it is to be construed to mean legal representatives, especially in an act which would devest individuals or corporations of their estates. The county judge was bound to exclude this petition upon the evidence produced before him. This was to the amount of $9,400. Before the act of 1869, so would have stood the case at common law and statute. But it is claimed that there is an express provision in the act of 1869, that allows corporations to become petitioners. This is true. It permits, however, only *solvent* corporations. so to petition; and the burden of proving solvency was with the petitioners. This was necessary to confer jurisdiction upon the judge. This was not done. In this case the judge has presented to us the proof, but its *solvency* was *not* proved. Another petitioner was that of the Baptist church, representing $740, set forth on the petition, "S. B. Terwilliger, W. Waterbury, Baptist church." This authentication is still more defective than that of the Congregational church. The only evidence in

this case is, that the two persons named signed the petition. It does not appear that they were even members or trustees of this church; much less, that they were authorized to sign a petition to encumber their property The same remarks apply to this case as to that of the Congregational church. Another petitioner, whose name upon the assessment roll stands as follows: "Wiebelzahl Wm., Mrs. $460." Upon the petition is the same name, with the addition at the end, "administratrix." There is no other name on the tax list that resembles this, and the name, "as administratrix," added, is allowed to be a petitioner, with no proof that she is such administratrix; nor is it easy to see how an administratrix can vote to encumber *real estate*, which generally belongs to the heirs-at-law. To entitle her to petition she must be a legal representative of the real estate assessed. Another petitioner whose name was upon the assessment roll was "the Red Spring Company," $560. The return does not show by whom this petition was signed; and there is the absence of all evidence that anybody was authorized to sign for this company, as well as the want of evidence of *solvency*, in order to confer jurisdiction upon the judge.

There were several petitioners claiming to represent estates, viz.: Simeon H. Barrett's estate, $600; C. Buell's estate, $600; Nelson Burnham estate, $360; William Putnam estate, $1,000. There is no legal evidence in the case that the persons signing the petition legally represented these estates or had authority to sign the petition. The name of Elvira Putnam appears upon the tax list for $200. The petition is signed by her as administratrix, without evidence of authority, or rather with the presumptive legal evidence that she possessed *no* authority. Among the petitioners is "Walter Barrett estate." What amount of estate this petition represented, cannot be determined, as no such name is found on the assessment roll for 1869; but adjoining and next to two names of Barrett is "Walter Balfour," and there is no other name upon the roll so nearly resembling it. This name represents $1,500. There is either no proof to make this petition good for any amount, or if it represents an estate, there is the additional defect of proof of authority; or if it is a clerical error, meaning "Balfour," then it is the representative of $1,500. If it be neither of these, the name is not on the tax list. The burden was upon the party claiming jurisdiction from it to show this and to show how much he represented by his petition; it may have been received for a very large amount.

There also appeared upon the list of taxable estates the name of George S. Batcheller, guardian, $6,666. In this case Mr. Batcheller, being sworn, proved himself to be guardian of the Cook estate, but did not offer any evidence of his authority to encumber the estate of his wards or to commit devastation of it. He had no authority at common-law or by statute, unless the statute of 1869 can be stretched to authorize the estates of his ward to be thus devested, which, as we have already stated, is not the rule by which such statutes are to be construed. Had he applied to the

court for permission so to encumber it, it would have been refused. The same remark will apply to the petition of " John C. Hulbert, guardian," $2,000; to which it may be added, that in the latter case, there was no evidence of the existence of guardianship, nor of the name of the estate, or persons for whom he was guardian. The name of D. B. Harrington was also included, who was a petitioner to the amount of $6,000. This was also proved before the judge, and by the testimony of Mr. Batcheller. His petition was not excepted from the amount estimated as a part of the majority. The name of D. B. Harrington is not upon the assessment roll presented before us, nor any name that resembles it, representing any such sum.

| | |
|---|---:|
| The taxable value of the property of the town is, by the assessment roll, $2,318,170 ; one-half of this is .... | $1,159,085 00 |
| The petitioners allowed by the county judge seem to be.. | 1,189,394 00 |
| Making a majority upon the petitions of................ | 30,304 00 |
| The errors above pointed out, exclusive of the petition of Walter Barrett, the amount of which does not appear, is, | 30,586 00 |
| Falling short of a majority ........................... | 177 00 |
| But adding Walter Barrett, upon the assumption of a clerical error in his name............................ | 1,500 00 |
| There is a failure of a majority by.................... | 1,677 00 |

If I am right in these views, we need not discuss the other questions in the case. It is a question of jurisdiction. Jurisdiction was questioned; the writ called upon the actors to show their authority ; the strictest construction of the statute was demanded.

I think jurisdiction has not been shown, and that the proceedings should be set aside.