THE STATE ex rel. THE CHICAGO, MILWAUKEE & ST. PAUL RAILROAD COMPANY, Appellant, vs. BLACKSTONE and others, Respondents.

*May 1 — June 1, 1885.*

*Municipal subscription to railroad stock: Who may sign petition, etc.*

1. Under sec. 946, R. S. (providing for the acceptance through a petition of the tax-payers of a municipality of the proposition of a railroad company for a subscription to its stock), the persons resident in the municipality on the day when the petition may first be presented, and whose property was assessed for taxation on the last assessment roll (although their names may not appear on such roll), except idiots, insane persons, and minors, are those entitled to sign such petition. [Whether the guardian of an idiot, insane person, or minor, to whom the property of his ward was assessed, may sign the petition, is not determined.]
2. But in determining whether the petition has been signed by a majority of the tax-payers so resident, idiots, insane persons, and minors are to be counted.

APPEAL from the Circuit Court for *La Fayette* County. *Mandamus.* The case is sufficiently stated in the opinion.

For the appellant there were briefs signed by *Moses M. Strong*, attorney, and *John W. Cary* and *Burton Hanson*, of counsel, and the cause was argued orally by *Mr. Strong* and *Mr. Hanson.*

For the respondents there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton.*

TAYLOR, J. This action was brought by the relator for the purpose of compelling the town board of said town of White Oak Springs to issue its bonds for the sum of $5,000, and deliver them to the relator in exchange for that amount of the capital stock of the Eastern, La Fayette & Mississippi Railway Company. The reasons for the demand are set forth at length in the petition of the relator for the writ of *mandamus*, and the objections to their demand

are fully set out in the' answer of the respondents to said petition. The substance of the claim of the relator is: That the Eastern, La Fayette & Mississippi Railway Company made a proposition to said town to aid it in the construction of its proposed railroad. The proposition was made in the manner prescribed by sec. 945, R. S. 1878, and thereby it desired said town to subscribe for $5,000 of the capital stock of said company, and pay for the same by issuing and delivering to said company its ten bonds for the sum of $500 each, payable as stated in said proposition, and upon the conditions therein also stated. Within three months after filing said proposition with the town clerk of said town, the said company, by written request, required a notice to be given by the clerk of such town that, after a date in such notice named, a petition to the proper authorities of said town, praying that such proposition be accepted and carried into effect, would be presented for their signatures to the resident tax-payers of said town in the form prescribed by the first subdivision of sec. 946, R. S. 1878, which reads as follows:

"Within three months after the filing of any such proposition with the proper clerk, the railroad company may, by a written request, require notice to be given by such clerk, in the same manner hereinafter provided for giving notice of an election to consider such a proposition, that after a date in such notice named, not less than five days from date of notice, a petition to the proper authorities of such municipality, praying that such proposition may be accepted and carried into effect, will be presented for their signatures to the resident tax-payers thereof; which petition, embracing a copy of such proposition, shall be appended as a part of such notice. If thereafter, and within four months from the filing of such proposition with such clerk, the railroad company shall deliver to such clerk such petition, embracing a copy of such proposition, and bearing the signatures

of a majority of the persons residing in such municipality, who were assessed for taxes on real or personal estate in such municipality, as shown by the last assessment roll, which signatures shall be verified by the affidavit of some person who witnessed the signing of the same, then such proposition shall be deemed accepted, and the proper county board, town board, village board, board of trustees, or common council, shall carry the same into effect in the manner hereinafter provided."

That such notice was duly given by said town clerk, and within four months after the filing of such proposition with said town clerk the railroad company delivered to such clerk such petition, embracing a copy of such proposition, "and bearing signatures of a majority of the persons residing in such town, who were assessed for taxes on real or personal estate in such town, as shown by the last assessment roll," with such signatures duly verified, as required by said statute.

The relator then alleges that the railroad was constructed or caused to be constructed by said company within the time and in the manner agreed upon in said proposition; that the relator claims said bonds as the assignee of the said The Eastern, La Fayette & Mississippi Railway Company; that it has demanded the same of said town, and the town refuses to issue or deliver the same to the said relator.

The answer of the respondents denies most of the material allegations of the petition; and, among other things, denies that the railroad company, within the said four months or at any other time, delivered to the clerk of said town the petition mentioned, bearing the signatures of a majority of the persons residing in said town who were assessed for taxes on real or personal estate in such town, "as shown by the last assessment roll." The learned circuit judge, before whom the action was tried, found for the respondents upon the issue raised by this denial; and, as we

are of the opinion that this finding of the learned judge is sustained by the evidence, it becomes unnecessary to consider the other grave questions discussed upon the hearing of this appeal by the learned counsel for the respective parties, one of which questions involves the constitutionality of the statute which authorizes the municipalities of the state to aid in the construction of railroads, with the consent of a majority of the tax-payers thereof.

In order to determine whether the learned circuit judge was right in finding from the evidence that the petition presented to the town clerk did not bear the signatures of a majority of the persons residing in the town, as required by said statute, the following questions must be settled: (1) At what time must the persons assessed for taxes on the previous assessment roll be residents of such town in order to entitle them either to sign the petition, or to be counted in determining whether the petition bears the signatures of a majority of such resident tax-payers? (2) What persons are competent to sign the petition? And (3) what persons must be counted who have not signed the petition, in order to determine whether a majority have signed the same?

1. The statute is entirely indefinite as to the time when the tax-payer must be a resident of the town in order to entitle him to sign the petition. The learned circuit judge solved the question by holding that he must be a resident of the town on the first day on which the petition may be presented to the tax-payers for signature, which in the case at bar was on the 22d day of January, 1880. This appears to us to be the most reasonable construction to be put upon the statute, and on the whole most just to all parties interested. It renders the question certain, and makes it possible for those presenting the petition to determine with accuracy when the petition has been signed by a majority of such residents; whereas, to hold that persons may sign who become residents after that day, and before the day

fixed for filing it with the town clerk, or that persons who remove from the town between such dates, and who have not signed, cannot be counted in determining the majority, necessarily renders the whole matter uncertain up to the day upon which the petition is to be filed with the clerk. As it becomes necessary under the statute for the court to make a rule which must in its nature be somewhat arbitrary, in order to uphold the statute and render certain that which the statute has left in uncertainty, we are of the opinion that the rule adopted by the learned circuit judge should be adopted as the true rule to govern in all cases of this kind arising under the statute.

2. In answering the second question, we think that all persons who are residents within the rule above stated, and were assessed for taxes on real or personal estate in said town upon the assessment roll of the previous year, and who are not idiots, insane persons, and minors, are competent to sign such petition. It is evident that when the legislature made it requisite that a majority of the resident tax-payers must sign the petition in order to authorize the town to subscribe for the stock of a railroad company, and issue the bonds of the town in payment therefor, it was not intended that such tax-payer should also be an elector of said town in order to be counted either for or against such authorization. The question is submitted to resident tax-payers whose property has been assessed for taxes on the previous assessment roll. The only qualification is that the person is a resident, and that his or her property was assessed for taxes on such assessment roll; but as the act of signing the petition necessarily requires the doing of an intelligent act, the person doing such act must have sufficient understanding to comprehend the nature thereof, and legal capacity to do such act. This rule would exclude, as signers, idiots, insane persons, and minors, but it does not exclude a married woman, who has, under our

law, the same rights as to her separate property as though unmarried. Whether a guardian for an insane person, idiot, or minor, to whom the property of such insane person, idiot, or minor was assessed, could lawfully sign such petition on behalf of his ward, we do not determine. In New York, under a similar law, it was held he could not. See the opinion of POTTER, J., printed as the opinion of the court of appeals in the case of *People ex rel. Freeman v. Hulburt*, 46 N. Y. 115, 116.

3. The persons who are to be counted in determining whether the petition bears a majority of the signatures of the persons resident in said town who were assessed for taxes, etc., presents another question. In determining this question the only thing to be inquired into is, How many such persons were residents in said town on the day the petition could first be presented for signature? The signatures of a majority of such persons must be obtained upon the petition, and although some of the persons so assessed are incompetent to sign, either by want of mental capacity or because they are infants, this does not relieve the petitioners from obtaining a majority of such tax-payers. Idiots, insane persons, and infants, whose property is assessed for taxes in the town, and who reside therein, are equally entitled to the protection of the law against the acts of others which will subject their property to taxation as though sane or of full age. Because they have not the legal capacity to consent is no reason for holding that they must not be counted as dissenting. Upon this question we have no doubt. The statute does not exclude them, and we think that any construction of the law which excludes them would be wholly unauthorized. In determining the question of a majority, all must be counted who are residents within the rule above stated, and whose property was assessed for taxes, etc. No exception is made, and no qualification as to the persons to be counted in determining the

majority, except that they must be residents and assessed for taxes, etc., is made by the statute. The statute does not say a majority of such resident tax-payers who are competent to sign the petition, or who are not insane, idiots, or minors. And in the construction of a statute of this kind, which affects equally the property of the insane, idiots, and minors, as those who are sane and of full age, we would be wholly unauthorized in adding such a limitation to the plain and comprehensive language of the law.

The only other material question bearing on the subject of what constitutes a majority of the persons resident in the town and assessed for taxes, etc., is as to the effect which must be given to the words " as shown by the last assessment roll." One construction which might be given to these words is the one partially adopted by the learned counsel for the petitioners, viz., that no resident tax-payer is competent to sign the petition, or be counted in determining the question of majority, except those whose names appear upon the last assessment roll. And those residents whose property has been assessed for taxes on said roll, and who have paid the taxes so assessed, but whose names do not appear on the assessment roll, cannot be counted either for or against the proposition. The statute does not say so in express terms, and we think such construction is against the spirit of the act. The evident object of this statute was and is to submit the question of aiding in the construction of railroads, by towns and other municipalities, to the decision of those whose property is to be subjected to a tax for the payment of the money voted in aid of such railroad, viz., to the tax-payers of the town instead of to the electors thereof. And the only restriction as to the tax-payers who shall determine the question, which is plainly stated in the law, is that they shall be residents of the town, and, as we construe the law, when the petition is to be first presented, and that their property has been assessed for

taxes on the last assessment roll. The only effect of the words "as shown by the last assessment roll" would be to exclude those who had property in the town, subject to taxation, the title to which was not acquired by them until after the last assessment roll was completed; or whose property-had by mistake been omitted from the assessment roll; or possibly it might exclude a person whose property had been assessed to another who had paid the taxes thereon, as in the case of a disputed ownership; or in the case of a tenant paying the taxes on his landlord's estate according to the terms of his lease. We think that, under the statute, all persons resident in the town on the day the petition may first be presented, and whose real or personal property was assessed for taxes on the last assessment roll, and whose property is liable for the payment of such taxes, or who have paid the same, are to be counted in determining the question whether a majority of such resident tax-payers have signed the petition, and that it is not limited to persons whose estate has been so assessed, and whose names appear on such assessment roll.

The rule as above stated is certainly the just one, if the question is to be fairly determined by those who reside in the town and have property therein subject to taxation. Otherwise the determination of the question might depend upon the accuracy and carefulness of the last assessor in making up his assessment roll, and not upon the will of the real resident tax-payers. Under our statute the assessor may assess the real estate without naming any person as the owner, when the name of the owner is not known to the assessor. See sec. 1043, R. S. 1878. Under that law a careless or ignorant assessor might assess a large part of the real estate without attaching the name of any owner, or in a wrong name. An assessment without a name attached, or in a wrong name, would exclude the owner from having a voice in determining the question of granting rail-

State ex rel. Chicago, M. & St. P. R. Co. vs. Blackstone and others.

road aid, under the rule that no one can sign the petition or be counted in determining the question of majority, whose name does not appear on the last assessment roll. We do not think the legislature intended so important a matter as this should depend upon the accuracy or ignorance of the assessor. We think is was intended to place the decision of the question in the hands of those resident tax-payers whose property, real or personal, had been assessed for taxes on the last tax roll, limited only as above stated.

Unless this rule be substantially adopted there could be no pretense on the part of the petitioners that a majority of the resident tax-payers had signed the petition. The whole number of signatures on the petition filed by the railroad company with the town clerk was forty-three. Of these the names of at least thirteen are not found on the last assessment roll, viz.:

| SIGNATURES ON PETITION. | NAMES ON LAST ASSESSMENT ROLL CLAIMED TO BE REPRESENTED BY THOSE ON THE PETITION. |
|---|---|
| Mrs. Mary Brunskill. | Mrs. Brunskill. |
| Thomas A. Brown. | Thomas Brown. |
| John Henry Dunn. | J. H. Dunn. |
| John Harker. | J. W. Harker. |
| Charles Johnson. | J. Johnson. |
| Thompson Littlefair. | Thomas Littlefair. |
| Joseph McGee. | No name. |
| John McGee. | J. Magee, Jun. |
| Stephen D. Oliver. | S. Oliver. |
| Susannah March. | Mrs. G. March. |
| John C. D. Robinson. | J. Robson. |
| Mrs. Ann Simmons. | Mrs. Symons. |
| W. A. Thompson. | W. Thompson. |

There are several other discrepancies between the names on the assessment roll and those found on the petition, which, under the strict rule that those only can sign the petition, or be counted against it, whose names appear on the assessment roll, would reduce the number of signers to

a still lower figure; but if none of the thirteen names above given can be counted as petitioners because not on the assessment roll, then there is no pretense that a majority have signed the petition. This strict rule was not contended for by the learned counsel for the petitioners in the circuit court, and in each case evidence was given to show, or admissions were made to establish the fact, that the names on the last assessment roll were in each case intended for the real owner of the property assessed whose name appeared on the petition. We think this evidence was clearly admissible, and that the construction to be given to the statute upon the question of who may sign or be counted against the petition is as we have above stated it.

Under the rules above stated, as to who may sign the petition and who may be counted against it, it is evident that the learned circuit judge rightly determined that a majority of such residents whose property, real or personal, had been assessed for taxes on the last assessment roll had not signed the petition. Under the rules above stated, all the resident heirs at law and devisees of the real estate assessed for taxes upon said assessment roll, as the estates of J. Brown, estate of J. Brunskill, estate of J. McNulty, estate of R. H. Magoon, estate of J. O'Brien, estate of C. Thompson, estate of J. Jeffrey, estate of Jas. Jeffrey, and estate of Joseph Edge, must be counted. The evidence shows that the estate of Joseph Edge was assessed for taxes upon 253 acres of land in said town; that this land had been devised by the deceased Joseph Edge to his children, Joseph Edge, Mrs. Mary McGee, Mrs. Susannah Tuffle, Mrs. Sarah Brinley, Mrs. Martha Billings, John Edge, George Edge, Isaac Edge, and Robert Edge; that in 1879 and 1880 Mrs. Mary McGee, George Edge, and Isaac Edge lived in the town of White Oak Springs. The other owners of the estate were either nonresidents of the town, or their names appeared

on the assessment roll, and were assessed for other property in said town.

To the estate of Coulthard was assessed 280 acres of land in said town on the roll of 1879. John Coulthard died testate, and devised forty acres of said land to his widow, Ann Coulthard, during her life, and all the residue of his property to his sons, Joseph Coulthard and William Coulthard. They were all residents of the town of White Oak Springs in 1879 and 1880, and neither of the three names appear upon the assessment roll for 1879. To the estate of John O'Brien was assessed 120 acres of land on the tax roll of 1879. He appears to have died intestate, leaving eight children, all being in the town of White Oak Springs in 1879 and 1880. His widow was dead in 1880. Of these children, Ellen O'Brien, Mina O'Brien, Regina O'Brien, Stella O'Brien, Libby O'Brien, and Mary Jane O'Brien, now Mary Jane Cavanaugh, were living in the town of White Oak Springs in 1879 and 1880. The other two children, Samuel O'Brien and J. W. O'Brien, were assessed on the assessment roll for 1879 for other property than that belonging to said estate.

The evidence does not show that there were any persons residing in said town of White Oak Springs in January, 1880, who were interested in the property assessed as the estates of Brown, Brunskill, Jeffrey, McNulty, Magoon, and Thompson. As to the estates of Coulthard, Edge, and O'Brien, in which a portion of the devisees and heirs at law lived in said town in January, 1880, it appears that several years had elapsed since the deaths of the testators and intestates; but there was no evidence that there ever had been a distribution of the estates among the heirs, or any partition of the estates, in all of which the devisees or heirs at law became jointly interested at the time of the death of the testator or intestate, and the assessor having assessed

the property as belonging to the estate instead of to the individuals, there does not arise any presumption that the estates had been partitioned, or that the heirs at law or devisees had conveyed away their separate interests. We think, therefore, that the thirteen persons interested in said estates as devisees or heirs at law, were entitled to be counted as persons resident in said town whose real estate had been assessed for taxes on the assessment roll for 1879, in determining the question whether a majority of such resident tax-payers had signed the petition; and the fact that some of them were minors and others married women does not bar them from being counted upon that question. The evidence does not show that this real estate belonging to such minors, children, or to such married women, was assessed to any guardian of such minors, nor to the husbands of the married women; but, if it shows anything, shows the direct contrary.

In determining the question whether a majority of the resident tax-payers signed the petition, we think the evidence shows the following facts: (1) The whole number of persons, including the nine estates, appearing upon the assessment roll as assessed for taxes in 1879, is 116. (2) Of this number, at least twenty-seven were not residents of the town on the 22d of January, 1880. (3) Five names were entered twice on the roll as assessed for the same property. (4) Two were dead, and nine were assessed as estates; — making in all, not to be counted, forty-three; leaving on the tax roll, presumptively entitled to be counted, seventy-three. To this number must be added the thirteen heirs and devisees of the estates who were assessed under the names of the estates of Coulthard, O'Brien, and Edge, and we have eighty-six to be counted. A majority of this number would be forty-four.

The petition presented bore in all the signatures of forty-three; but as to two of these, Thomas A. Brown and John

Henry Dunn, the evidence shows quite conclusively that they were not residents of the town of White Oak Springs on the 22d day of January, 1880. Deducting these from the signers and we have forty-one; certainly not a majority of eighty-six. It is also doubtful whether Joseph McGee, Susannah March, or Stephen D. Oliver were entitled to sign the petition. In any aspect of the case, the finding of the learned circuit judge that the petition was not signed by a majority of the persons resident in said town on the 22d day of January, 1880, who were assessed for taxes upon real or personal property in said town, as shown by the last assessment roll, is clearly supported by the evidence in the record.

*By the Court.*— The judgment of the circuit court is affirmed.