PAPE, Appellant, vs. TOWN OF CARLTON, Respondent.

*November 9—December 4, 1906.*

*Assessment roll: Power of town chairman to make purchases: Road machines: Statutes: "Last preceding assessment:" Pleading: Amendment: Appeal and error.*

1. When an assessment roll has been corrected by the assessor and delivered to the town clerk pursuant to sec. 1064, Stats. 1898, it is an assessment roll within the meaning of ch. 83, Laws of

1899 (providing that the chairman of the town board may, upon petition of the taxpayers of one or more superintendent districts of such town, representing more than one half of the taxable property of such district or in each of such districts—to be ascertained from the last preceding assessment roll, and certified to as such by the town clerk of such town—and also of the superintendent of highways of each district, contract for a road machine), notwithstanding it is still subject to correction as to mistakes under sec. 1065.

2. If, after the assessment roll has been corrected by the assessor and delivered to the town clerk pursuant to sec. 1064, Stats. 1898, the chairman of the town is petitioned to purchase a road machine under ch. 83, Laws of 1899, the sufficiency of the petition, as to putting him in motion to obligate the town to make the purchase, is to be tested by such roll unless in the meantime another shall have been made.

3. It is sufficient to render one a competent petitioner under ch. 83, Laws of 1899, that he is a taxpayer of the road district when the petition is certified by the town clerk and presented to the chairman.

4. Under ch. 83, Laws of 1899, a petition dated June 14, 1900, was certified by the town clerk and presented to the town chairman on August 25, 1900. The assessment roll of 1900 was completed and on file prior to the time the petition was so certified and presented. The petition was signed by a sufficient number of taxpayers as shown by the assessment roll of 1900, but by an insufficient number under that of 1899. In an action for the purchase price of a road machine ordered by the town chairman under the authority of such petition, held:

(1) An allegation of the complaint, in effect, that the town chairman was "petitioned" on June 14, 1900, either standing alone or in connection with the date of the petition, did not control as to the date when an effective petition was presented.

(2) The language of ch. 83, Laws of 1899, "The chairman of the town board . . . may, upon being petitioned," reasonably points to the time of the certification of the petition for presentation to the chairman.

(3) The assessment roll of 1900 governed.

5. It is not error to refuse to allow a complaint to be amended by adding thereto a new cause of action arising pendente lite.

APPEAL from a judgment of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. Reversed.

Action to recover on a contract for the purchase of a road machine, such contract having been made, as alleged, pur-

suant to a petition of taxpayers of road districts Nos. 6 and 10, of the town of *Carlton,* Kewaunee county, Wisconsin. The contract provided for payment for the machine in five instalments of $45 each, three of which were due at the time of the commencement of the action. The town defended upon the ground that the contract was void for want of the statutory requisites to the authority of the chairman of the town board to make it under sec. 2, ch. 83, Laws of 1899. At the close of the evidence the court decided that there were no controverted questions of fact by reason of stipulations made during the trial. Both sides moved for a directed verdict. The court granted the motion made on behalf of the plaintiff, taking a verdict for $168.30, subject to its opinion on the legal questions involved. There was a motion made on behalf of the plaintiff to amend the complaint so as to include the fourth instalment for the road machine, which fell due after the commencement of the action, and the motion was denied. The court finally decided that according to the facts stipulated on the trial and undisputed evidence the petition for the purchase of the road machine satisfied the requisites of ch. 83, Laws of 1899, as to road district No. 6, and also as to road district No. 10, if the names of Katie Drab and Fred Ihlenfeldt were entitled to be counted. In respect to that matter the court found that the name of Joseph Bohman appeared on the assessment roll of the town of *Carlton* for 1899 as the owner of $3,315 in value of taxable real estate, and $982 in value of taxable personal property in said district No. 10, and that Mrs. Drab and Fred Ihlenfeldt appeared upon the assessment roll of the town for the year 1900 as owners of the real estate assessed the previous year to Joseph Bohman, and his name appeared on such roll as the owner of taxable personal property to the amount of $435. There were not names of taxpayers representing the requisite amount of property appearing on the assessment roll of 1899 to satisfy the law aforesaid, but counting the

names of Mrs. Drab and Mr. Ihlenfeldt and the property as-
sessed to them there were sufficient names representing the
requisite amount of property appearing on the assessment
roll of 1900.   The petition for the purchase of the machine
was dated June 14, 1900.   In the complaint it was alleged
that the chairman of the town board was petitioned in ac-
cordance with the statute on June 14, 1900, to contract for
the machine.   The petition was not presented to the chair-
man of the town board till August 25, 1900.   On that date
the town clerk affixed to the petition his certificate that it was
signed by a majority of the taxpayers of the two districts
mentioned, representing more than one half of the taxable
property thereof . according to the last previous assessment
roll.   The assessment roll of 1900 was completed and on file
prior to the time the petition was so certified, but the peti-
tion must be regarded as having originated in the sense that
it was signed by the persons whose signatures appeared there-
on on the day of its date, to wit, June 14, 1900.   The last
previous assessment roll as regards that date was the roll of
1899.   Therefore Katie Drab and Fred Ihlenfeldt were not
qualified petitioners for the purchase of the road machine
and the petition was insufficient to warrant making the con-
tract.   Judgment was accordingly rendered in favor of the
defendant notwithstanding the verdict, dismissing the com-
plaint with costs.

For the appellant there was a brief by *Otto Bruemmer,*
attorney, and *L. J. Nash,* of counsel, and oral argument by
*Mr. Nash.*

For the respondent the cause was submitted on the brief of
*Geo. W. Wing* and *M. T. Parker.*

MARSHALL, J.  From the statement it will be seen that the
case turned in the court below on whether under sec. 2, ch. 83,
Laws of 1899, authorizing the purchase by towns of road
machines, the petition spoken of is to be signed by a majority

of the taxpayers of the road district, or districts, representing a majority of the taxable property therein according to the last previous assessment roll of the town prior to the date of the paper, the decision being in the affirmative. The language of such section, so far as necessary to be considered, is as follows:

"The chairman of the town board thereof may, upon being petitioned in writing by a majority of the taxpayers of one or more superintendent districts of such town, representing more than one half of the taxable property in such district or in each of such districts (to be ascertained from the last preceding assessment roll, and certified to as such by the town clerk of such town) and by the superintendent or superintendents of highways of each such district, contract," etc.

The arguments of counsel have been very helpful in reaching a satisfactory conclusion here, in that they probably brought to our attention all of the decisions of this court which from any standpoint could reasonably be said to affect the matter. Each feature of such arguments and of the learned discussion contained in the opinion of the circuit judge has been carefully studied. However, it is thought best not to treat such features here in all their details, but rather to give such attention to the authorities cited as to show generally the bearing they seem to have upon the precise point which appears to be vital on the appeal, and to confine the opinion otherwise, in the main, to the question involving such point as an original proposition, viz.: Under the statute quoted, are the signers of the petition to be regarded as petitioning the chairman of the town board for the purchase of a road machine, only as of the date of the paper signed by them, or are they to be regarded as petitioning such chairman at the time the paper is certified to by the town clerk and presented to such chairman? That involves this: Is it sufficient to render one a competent petitioner under the statute that he is a taxpayer of the road district when the

petition is certified by the town clerk and so presented? Appellant stands for the affirmative, and if he is right the petition in question should have been tested by the assessment roll of 1900 instead of that of 1899, if the former existed, within the meaning of the law, at the time the town clerk made his certificate.

We have little difficulty in passing successfully the contingency last suggested. It is considered that when an assessment roll shall have been corrected by the assessor and delivered to the town clerk under sec. 1064, Stats. 1898, which is required thereby to occur on or before the first Monday in August of the year it is made, it is an assessment roll within the meaning of ch. 83, Laws of 1899, notwithstanding it is still subject to correction as to mistakes under sec. 1065. The prior section speaks of the roll, when ready to be filed in the town clerk's office, as a completed roll, and so it is to all intents and purposes. In our view, if the chairman of a town is thereafter petitioned under said ch. 83 the sufficiency of the request, as to putting him in motion to obligate the town for the purchase of a road machine, is to be tested by such roll unless another shall in the meantime have been made. There is no authority cited to our attention, or which we can discover, throwing any light on this question. It must be disposed of as an original matter according to our best judgment.

We cannot agree that the allegations of the complaint as to the chairman of the defendant town having been petitioned on the 14th day of June, 1900, cut any controlling figure in the case, either standing alone or in connection with the date of the petition, even if we assume, for the purposes of the point, that the act of signing as to each petitioner relates to such date. The undisputed evidence is that the petition was not presented to the chairman of the town board till August 25, 1900. Therefore, if that be the time when, in contemplation of law, he was "petitioned," then the decision should

be accordingly, regardless of the mere conclusion pleaded that he was "petitioned" on June 14, 1900.

In the opinion of the circuit court we observe that considerable reliance was placed on *Siegel v. Liberty,* 118 Wis. 599, 95 N. W. 402. We are unable to give the effect to that case which the learned court attributed thereto. The point here at issue was not there discussed or decided. The case did not disclose, as we can discover, when the petition was signed or presented to the chairman of the town. It showed when the contract was made; that it was in December, 1899, and that the sufficiency of the petition was tested by the assessment roll of 1898. However, it does not necessarily follow because the contract was made after the assessment roll of 1899 was filed with the town clerk that the chairman of the town board was not "petitioned" to make the contract prior to the filing of such roll. In the printed case used upon the appeal it appears that the plaintiff alleged that the petition was not presented to the chairman till after the 3d day of November, 1899. That was put in issue by the answer and found in the defendant's favor. The printed evidence, as we read it, does not show the date of the petition or when it was signed or when it was presented to the town chairman. Certainly the question of whether the act of "petitioning" is referable to the date of the paper or to that of its presentation to the chairman of the town was not raised or discussed or referred to in any way, so far as we can discover.

Some reliance is placed on *State ex rel. Spring Lake v. Pierce Co.* 71 Wis. 321, 37 N. W. 231, and *State ex rel. El Paso v. Pierce Co.* 71 Wis. 327, 37 N. W. 233. Those cases arose under the law of 1885, authorizing county aid to towns in the building of bridges. The law provided for such aid in case of a town having voted to construct or repair any bridge or bridges wholly or partly within such town and provided for one half the cost of such construction or repairs and such cost exceeding one fourth of one per cent. of the

taxable property in the town "according to the last equalized valuation." The defendant, in the last case mentioned, at its annual town meeting in April, 1886, determined upon the building of a bridge and otherwise provided as indicated in the law of 1885, and after the equalized valuation of the taxable property of the town for that year was made, the county board was called upon to appropriate out of the county treasury sufficient money to defray one half the cost of the improvement. It was held that the last equalized valuation of the property of the town, existing at the time it acted on the bridge matter at its annual town meeting, was to be taken as the test of whether the county possessed authority to extend the aid requested, as the law contemplated that the right of the town thereto should become fixed upon its taking action as required by such law. We are unable to see how that decision points the way to a correct conclusion as to the question we have here. The obvious purpose of the law of 1885 is that the action of the town, satisfying the condition precedent to the obligation of the county, is to be taken with reference to an existing equalized valuation of taxable property in the former, and, therefore, necessarily the action of the county must be taken with reference to the same valuation.

*State ex rel. C., M. & St. P. R. Co. v. Blackstone,* 63 Wis. 362, 24 N. W. 72, which dealt with the law authorizing municipal aid in the construction of railroads, is referred to by respondent's counsel as suggesting that the qualification of a petitioner under such a law is to be determined as of the time of his signing the petition. We do not so understand that decision. The statute authorizes the acceptance by a municipality of a proposition of a railroad company for the construction of a railroad upon a petition bearing the signatures of a majority of the male persons residing therein who were assessed for taxes as shown by the last assessment roll. It provides for a day certain when the petition may be first presented to any such resident taxpayer for his signature. The

court held, confessedly by a somewhat arbitrary construction, that the law contemplates only signatures of taxpayers residing in the municipality on such day; that neither the date of the petition, the time of signing it, nor that of its presentation is material on the subject of residence; that one cannot qualify by moving into the town between the time when it is first competent to present the petition for signatures and the time for filing it with the town clerk, nor disqualify by moving out during such period. The court was persuaded to adopt that construction because of a seeming necessity that the law should provide a time certain by which to test the competency of all petitioners as to residence. The law under consideration here does not make residence in the road district an essential to qualification of a petitioner. The only requisite is that at the time the chairman of the town board is "petitioned" the petitioner shall be a taxpayer therein, as appears by the last previous assessment roll. It has two features as to which certainty should be looked for: First, the time when the chairman is to be regarded as "petitioned" within the meaning of the act; second, the status of the signers of the petition as to their being taxpayers at that time as appears by the last previous assessment roll of the town.

*La Londe v. Barron Co.* 80 Wis. 380, 49 N. W. 960, and *State ex rel. Hawley v. Polk Co.* 88 Wis. 355, 60 N. W. 266, are cited to our attention by appellant's counsel as bearing on the question at issue. They dealt with the statute requiring a county board of a county to submit to the voters thereof the question of changing the location of the county seat upon a petition being presented to such board requesting it, signed by a specified proportion of such voters according to the poll lists of the last previous general election in the county. The point decided was that a person who signs such a petition may withdraw therefrom at any time before final action by the board. The question of whether a petitioner's qualification can be tested by a poll list made after he signs the paper

and before presentation of it to the county board was in no-
wise involved. True, the effect of the decision is that so long
as a person's name remains signed to such a petition he is to
be regarded as in the attitude of requesting the submission,
but the vital question here as to whether qualification to sign
can be referred to any circumstance occurring after the sign-
ing was not touched upon, and perhaps could not arise, as in
this case, because of statutory differences.

*Crogster v. Bayfield Co.* 99 Wis. 1, 74 N. W. 635, 77 N.
W. 167, where the court rejected a view of the law as to mu-
nicipal aid in the construction of a railroad, which would en-
able assessors after acceptance by the municipality of a rail-
road company's proposition on the subject, by the manner of
assessing property, to render the bonds to be issued pursuant
to such acceptance good or bad, is cited to our attention.
There the constitutional provision limiting municipal indebt-
edness was involved. The particular question presented was
this: At what stage in proceedings under the act do munici-
pal-aid bonds in the construction of a railroad become in-
debtedness within the meaning of sec. 3, art. XI, of the con-
stitution prohibiting municipalities from becoming indebted
in excess of "five per centum of the value of the taxable prop-
erty therein, to be ascertained by the last assessment for state
and county taxes previous to the incurring of such indebted-
ness?" The answer was, at the time of the acceptance of the
proposition of the railroad company, not at the time of per-
formance of the contract on its part by constructing the road.
It was with reference to the effect of holding the latter date
the proper time, leaving the capacity of the municipality to
become indebted open and subject to manipulation by the
assessors during the period of construction—in effect giving
the assessors power to invalidate the obligations of the mu-
nicipality,—that the court, speaking by the present chief jus-
tice, spoke of the danger of such a system and of the impor-
tance to the parties to such a contract of their being able to

-ascertain with certainty, at the time of entering into the con-
tract, the exact extent of municipal competency to incur in-
·debtedness, regardless of any future act of its officers.    If
·that has any bearing on this case it is quite remote and con-
fined to the mere principle that laws of this character should
be certain as to material features and that ambiguities should
·be solved with a view of rendering them so.

We have now referred to the decisions of this court, in the
main, which are discussed in the opinion of the trial court
·and the briefs of counsel.    It is considered that they do not
involve the precise question presented here nor throw any sat-
isfactory light upon it, though it must be conceded, as indi-
·cated at the outset, that the trial court and counsel succeeded
in bringing together the cases which most nearly approach
·such point.    It seems that we must solve the issue as to the
law of 1899 by looking at the words thereof in the light of
ordinary rules for statutory construction.    If there be any
precedents fairly in point no one seems to have been able to
discover them.    We confess that we have not, and although
the learned circuit court disposed of the case after much care-
ful study, and counsel upon both sides have devoted com-
mendable industry in endeavoring to aid us, they have not.
So far as the authorities go they indicate a strong judicial
leaning towards that construction of laws authorizing mu-
nicipal indebtedness which will make the desire of taxpayers
whose property presently will, constructively at least, be in-
·cumbered thereby, the ruling factor.

It is conceded that the law in question is ambiguous.    The
ambiguity grows out of uncertainty as to whether in an ap-
plication to the chairman of a town board to purchase a road
machine the date of his being "petitioned" in the matter is
that of the signed paper or that of the presentation thereof to
him certified by the town clerk.    The words "representing
more than one half of the taxable property in such district
or in each of such districts (to be ascertained from the last

preceding assessment roll)," etc., refer obviously to the words preceding, "the chairman of the town board . . . upon *being petitioned,"* etc. When uncertainty is removed as to the date when the chairman is "petitioned," within the meaning of the statute, uncertainty as to the assessment roll by which the sufficiency of the petition should be tested will likewise be removed.

There is no more familiar and helpful rule for judicial construction of a statute than the one ordinarily phrased substantially thus: When the meaning of a law, viewed in its literal sense or when applied to the object thereof, is uncertain, the legislative idea is to be determined by looking at the whole thereof, to the subject matter with which it deals, to its effects and consequences and to its reason and spirit, and if thereby the real legislative purpose can be discovered with reasonable certainty, and the same can be fairly said to be expressed within the scope of the language used, even by giving a most liberal construction thereto, such purpose must be regarded as written therein as efficiently as if it were so written in words taken in their plain ordinary meaning. *Ogden v. Glidden,* 9 Wis. 46; *Clark v. Janesville,* 10 Wis. 136; *Blunt v. Walker,* 11 Wis. 334; *Harrington v. Smith,* 28 Wis. 43; *State ex rel. Sturgeon Bay & L. M. S. C. & H. Co. v. Comm'rs,* 34 Wis. 162; *State ex rel. Heiden v. Ryan,* 99 Wis. 123, 127, 74 N. W. 544; *Rice v. Ashland Co.* 108 Wis. 189, 192, 84 N. W. 189.

It seems quite clear that the dominant purpose of the law of 1899 was to clothe the majority of the taxpayers of a road district, representing a majority of the taxable property thereof, with capacity to determine whether such road district should be burdened with the cost of a road machine and to make their wishes known at the time, as near as practicable, of the chairman of the town board being authorized to act in the matter. It contemplates that the chairman shall act with reference to the attitude of such taxpayers sub-

stantially at the time the obligation to pay for the road machine is incurred, and so it provides that the sufficiency of the result shall be tested by the last preceding assessment roll, the test to be made by the town clerk having the roll in charge.

If the time when the chairman is "petitioned" in any case be referable to the date of the writing the effect might be that the names signed thereto would constitute but a small minority of the taxpayers and taxable property in the district, or districts, at the time of the chairman being called upon to incur the obligation, and yet be sufficient, tested by the last previous assessment roll, to find which one might be required to go back one or two years. If the time of "petitioning" be so referable and such date is a few weeks prior to the filing of an assessment roll but presented thereafter for certification, why would it not be so referable if the making of two or more assessment rolls had intervened, so that, though testing the writing by the last one with reference to such date it would be sufficient, it would not be fairly representative, at all, of the attitude of taxpayers at the time the chairman of the town board is required to act in the matter? We are unable to assign any good reason why, if the date of the petition governs in case of the completion of one assessment roll between such date and the presentation of the paper for certification, it does not govern in all cases, regardless of the number of assessment rolls filed with such clerk between such date and the time of such certification. Is there any escape from the probable effect suggested of so construing the law as to give such significance to the date of the petition as that attributed thereto by the judgment complained of? Is not such effect quite inconsistent with the manifest object of the law?

Viewing the matter in hand as above, we are constrained to hold that the legislature could not have intended to express an idea that would necessarily lead to the unreasonable result

indicated. One of the cardinal rules for judicial construction is that a meaning which would lead, if adopted, to absurd consequences is to be rejected if any other can be discovered expressed within the reasonable meaning of the language of the act. *State ex rel. Heiden v. Ryan,* 99 Wis. 123, 128, 74 N. W. 544. So far may courts go to avoid attributing to the legislature an intent to enact an obviously absurd law that the literal sense of the words of the enactment, even when there is no uncertainty of expression, may be ignored and a meaning adopted reasonably within the scope of the language used, which will give a sensible effect to the work of the lawmakers. *Rupiper v. Calloway,* 105 Wis. 4, 80 N. W. 916.

Applying the foregoing here it seems that the language, "the chairman of the town board . . . may, upon being petitioned," etc., reasonably points to the time of the certification of the petition for presentation to the chairman, and we are constrained to hold that such was the legislative purpose. To so construe the enactment renders certain the time when the attitude of the taxpayers respecting the purchase of a road machine for a road district, or districts, must be made known to the chairman of the town board and makes that time the one best calculated to inform him of their wishes when he is called upon to act in the matter. The all-important question under the law would seem to be, What are the wishes *in præsenti,* having reference to the time it is sought to burden the district, or districts, with the cost of a road machine, of a majority of the taxpayers thereof representing a majority of the taxable property therein? That according to legislative wisdom is referable to the last previous assessment roll—in this case the assessment roll of 1900. Such construction of the law accords a reasonable meaning to all its parts and gives it the certainty said in *State ex rel. C., M. & St. P. R. Co. v. Blackstone,* 63 Wis. 362, 24 N. W. 72, to be so important as to warrant the court in adopting a quite arbitrary construction, if required, to attain it. We do not find it necessary to go that far here.

The result is seemingly reached by a natural, logical course of reasoning. We must, therefore, differ with the trial court, while commending it for the careful study of the subject evidenced by the record, in the endeavor to reach a correct conclusion.

Error is assigned because the court refused to allow the complaint to be amended by adding thereto a cause of action to recover on the fourth instalment in the note, which matured after the commencement of the action. That presents the question of whether an entirely new cause of action arising *pendente lite* can be brought in, in an action at law under the Code, by amendment. It appears that this court decided in the negative in *Shinners v. Brill,* 38 Wis. 648. The court, speaking by RYAN, C. J., said:

"It would be outside of the doctrine of amendment, and a violation of all principle and precedent, to permit a plaintiff to amend his complaint by setting up a new and distinct cause of action accruing *puis darrein continuance.*"

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment upon the verdict in favor of the plaintiff.