# APRIL TERM, 1912.

PENINSULAR POWER CO. *v.* SECRETARY OF STATE.

FOREIGN CORPORATIONS — SECRETARY OF STATE — PUBLIC SERVICE
CORPORATIONS—STOCK.

    An electric power corporation, organized under the laws of
    Wisconsin, is required to have the issue and amount of its
    stock approved by the Michigan railroad commission before
    the secretary of State may issue thereto his certificate of
    authority to transact business in Michigan. Act No. 144,
    Pub. Acts 1909; Act No. 177, Pub. Acts 1911; Act No. 266,
    Pub. Acts 1911.

Mandamus by the Peninsular Power Company, a for-
eign corporation, to compel Frederick C. Martindale, Sec-
retary of State, to grant respondent authority to transact
business in the State of Michigan. Submitted February
10, 1912. (Calendar No. 24,954.) Writ denied April 11,
1912.

*Colin P. Campbell* (*Jones & Schubring*, of counsel),
for relator.

*Franz C. Kuhn*, Attorney General, and *George S.
Law*, Assistant Attorney General, for respondent.

BLAIR, J. Relator is a corporation duly organized
under the laws of Wisconsin for "the production, devel-
opment, transmission and supplying for public purposes
of electricity for light, heat, power, signals and other
purposes." Its articles of association provide that "the
capital stock of this corporation shall be seven hundred
and fifty thousand dollars ($750,000) divided into
seven thousand five hundred (7,500) shares of common

stock, all of the par value of one hundred dollars ($100) per share." These articles of association were filed in the Wisconsin department of state, and a certificate duly issued on the 9th day of May, 1911.

On June 1, 1911, relator applied to the railroad commission of Wisconsin for authority to issue its stock, pursuant to the provisions of chapter 576 of the Laws of Wisconsin for the year 1907, and on the same day such authority was granted; the order providing, among other things, as follows:

"2. The purposes for which said stock shall be issued and sold are to supply said company with funds for the following purposes:

"(a) For acquiring lots 1, 2, 3 and the northeast quarter of the northeast quarter of section 12, the southeast quarter of the southwest quarter and lot 5 of section 1, the southeast quarter of the southeast quarter and lots 3, 4 and 5 in section 2, all of fractional section 11, all in township 40 north, range 31 west, in the county of Dickinson, State of Michigan, subject to all reservations, exceptions and conditions relative to ores and minerals and highways contained in all deeds of record on said property.

"(b) For acquiring lots 1 and 2, section 12, the fractional northeast quarter of section 11, lots 1 and 2 of section 2, all in township 39 north, range 19 east, in the county of Florence and State of Wisconsin, subject to the reserved right to explore for and mine other ore and other minerals in, on, or under said premises, together with the necessary rights of ingress and egress for such purposes, as well as for the purpose of properly mining and transporting such ore.

"(c) For acquiring all of the rights, privileges and powers conferred upon Max Sells, his heirs and assigns, for the construction and maintenance of a dam by chapter 409 of the Laws of Wisconsin for the year 1907.

"(d) For acquiring all of the rights, privileges and powers conferred upon E. W. Hopkins, his heirs and assigns, by Local Act No. 647 of the Legislature of the State of Michigan for the year 1907.

"(e) For paying organization expenses.

"(f) For acquiring overflow lands and other property necessary for the purposes of the company.

" (*g*) For constructing an electric power plant on the above-described property."

On the 5th day of October, 1911, relator deposited with respondent, at his office, a certified copy of its articles of incorporation and evidence of the appointment of an agent in this State to accept service of process, demanded that respondent should determine the franchise fee to be paid by relator, deposited a sworn statement by its president and secretary, stating the location of its office in Michigan and the address of its agent in charge of its business in Michigan, as well as the property owned and used by it in this State, its location and value, and the value of the property owned and used by it outside of Michigan, and that it had not begun the transaction of business within this State. Relator thereupon demanded that respondent receive and file said papers and issue to relator a certificate of authority to carry on its business in this State, as provided by section 4 of Act No. 206, Pub. Acts 1901, as amended by Act No. 266, Pub. Acts 1911. Respondent did thereupon—

" Refuse to receive and file the said papers, * * * and did refuse to issue a certificate of authority to relator, for the reason that said relator did not have the issue of its stock and the amount thereof approved by the Michigan railroad commission, pursuant to the provisions of Act 144 of the Public Acts of 1909, as amended by Act 177 of the Public Acts of 1911."

Relator applies to this court for a writ of mandamus, requiring the respondent to receive and file the papers tendered and to issue the certificate of authority, etc., in accordance with the provisions of our comity statute.

Act No. 144, Pub. Acts 1909, is entitled—

"An act to regulate the issuance of stocks, bonds and other evidences of indebtedness by persons, corporations and associations owning, conducting or operating certain public utilities."

Section 1 of the act, as amended by Act No. 177, Pub. Acts 1911, provides:

"Any corporation or association, except municipal corporations, organized and existing, or which may hereafter *be organized or authorized to do business* under the laws of this State, or any lessee or trustee thereof, or any person or persons owning, conducting, managing, operating or controlling any plant or equipment within this State used wholly or in part in the business of transmitting messages by telephone or telegraph, producing or furnishing heat, light, water or mechanical power to the public, directly or indirectly, and any railroad, interurban railroad or other common carrier may issue stocks, bonds, notes, or other evidences of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities or for the improvement or maintenance of service or for the discharge or lawful refunding of obligations: *Provided, and not otherwise,* that there shall have been secured from the Michigan railroad commission an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of such stock, bonds, notes or other evidences of indebtedness, is reasonably required for the purposes of such person, corporation or association," etc.

This statute not only applies to public utility corporations organized under the laws of this State, but by its express terms applies to the corporations "authorized to do business under the laws of this State," evidencing, in our opinion, the intention of the legislature to include within its provisions foreign corporations admitted to do business in this State under the comity statute. It follows, therefore, that, if the statute requires a domestic corporation to obtain the permissive order of the railroad commission in advance of, and as a condition precedent to, receiving its certificate of authority from the secretary of State, a like requirement was intended in the case of a foreign corporation seeking authority to do business in Michigan, and *vice versa.* This conclusion is further strengthened by the last proviso of said Act No. 177:

"That the provisions of this act shall apply to all stock,

shares, bonds or notes issued to or taken by the incorporators or their agents, assigns or trustees of any such corporation or association *in the first instance.*"

It is manifest that the legislation in question places the corporations which are the object thereof in a separate class from ordinary corporations; and the certificate of authority granted by the secretary of State cannot give rise to the usual powers conferred thereby, except where the action of the railroad commission has preceded such certificate. While the act throughout refers to the corporation, our incorporating statute contemplates the complete organization of the association and the election of officers before the recording of the articles of association. *Newcomb-Endicott Co.* v. *Fee,* 167 Mich. 574 (133 N. W. 540). It may well be held, therefore, that this organization is the one referred to.

As stated by the Supreme Court of Wisconsin:

"The actual judicially determined legislative intent must always govern, if expressed at all so as to be discernible by the searchlights which the court possesses. They permit of looking at a written law as a whole, to the subject with which it deals, to the reason and spirit thereof, to give words a broad or narrow construction, going either way to the limits of their reasonable scope, to supply omitted words which are clearly in place by implication, to change one word for another in case of the wrong one being clearly used, and so read out of the enactment the real intent, even though it may be contrary to the letter thereof. *Nichols* v. *Halliday,* 27 Wis. 406; *Haentz* v. *Howe,* 28 Wis. 293; *Harrington* v. *Smith,* 28 Wis. 43; *Palms* v. *Shawano County,* 61 Wis. 211 (21 N. W. 77); *State, ex rel. Heiden,* v. *Ryan,* 99 Wis. 123 (74 N. W. 544); *Wisconsin Industrial School for Girls* v. *Clark County,* 103 Wis. 651, 659 (79 N. W. 422); *State* v. *Railway Co.,* 128 Wis. 449, 479 (108 N. W. 594); *Pape* v. *Town of Carlton,* 130 Wis. 123 (109 N. W. 968).

"One of the most familiar and safe canons of construction may be stated thus: For the purpose of clearing up obscurities in a law, it should be read with reference to the leading idea thereof,—such idea being regarded as

such limitation upon particular words or clauses and expansion of others within the scope thereof, in connection with that of words clearly implied,—and be thus, if reasonably practicable, brought into harmony with such idea." *State* v. *Railroad Commission,* 137 Wis. 80 (117 N. W. 846).

In view of the plain purpose of the statutes to protect investors against the evils of overcapitalization, and the difficulties which would attend the enforcement of this policy if relator's interpretation should prevail, we think that it was the intention of the legislature that the order of the commission should be a prerequisite to the certificate of the secretary of State.   The writ is denied.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.   BIRD, J., did not sit.