(104 So. 538)

## ALABAMA PUBLIC SERVICE COMMISSION et al. v. MOBILE GAS CO.
### (3 Div. 691.)

(Supreme Court of Alabama. April 16, 1925.)

1. **Appeal and error ⬤⟲854(2)—Question for appellate court is whether judgment is correct.**

Assignment of error must be directed to order, judgment, or decree, and question for appellate court is whether judgment is correct, not whether ground on which it professes to proceed is tenable.

2. **Appeal and error ⬤⟲737—Though demurrer containing many grounds, assignment of error held sufficient.**

Where many grounds for demurrer were addressed to right of maintenance of bill, assignment of error challenging order overruling demurrer was sufficient.

3. **Public service commissions ⬤⟲2—Power to regulate public utilities within police power.**

Power given Public Service Commission, under Acts Sp. Sess. 1920, p. 38 et seq., being Code 1923, § 9740 et seq., to regulate public utilities, and issuance of securities thereby, as

given especially under Code 1923, §§ 9741, 9744–9756, is within police power.

**4. Constitutional law ⬳206(1), 209, 251— Test of state statute stated.**

Under Const. U. S. Amend. 14, a state statute is tested by whether its enforcement abridges privileges or immunities of citizens of United States, deprives any person of life, liberty, or property without due process of law, or denies any person within its jurisdiction equal protection of the law.

**5. Public service commissions ⬳27—Validity of orders of Commission must be reviewable.**

Statutes giving right of reasonable supervision of public utilities to state commission or agency must leave open the right to resort to the courts to test validity of its orders.

**6. Public service commissions ⬳19(1)—Reasonableness is test of validity of orders of Public Service Commission.**

Test of validity or invalidity of orders of Public Service Commission is whether, under relevant and material facts and circumstances of each case, the order is reasonable or unreasonable, uniform or arbitrary, in its due administration.

**7. Constitutional law ⬳298(1)—Statutes creating Public Service Commission sufficient as affording due process.**

Code Ala. 1923, §§ 9675, 9676, 9679, 9699, 9701, 9809, 9831, 9835–9843, provide sufficiently for judicial review of orders of Public Service Commission to afford due process under Const. U. S. Amend. 14.

**8. Gas ⬳8—Bill to contest Commission's order held authorized under statute.**

Provisions of Code 1923, §§ 9675, 9676, 9679, 9699, 9701, 9809, are sufficient to support bill for injunction to contest validity of Public Service Commission's order refusing gas company's petition for additional bond issue.

**9. Public service commissions ⬳22—Trial of cause to contest Commission's order will conform to reasonable rules of civil suits in equity.**

After bill is filed to test validity of an order of Public Service Commission, reasonable rules, regulations, and procedure prescribed for civil suits in equity will be followed to determine whether, under material and relevant circumstances, the order is valid or unlawful, reasonable or unreasonable, uniform or arbitrary, according to due process in the premises.

**10. Public service commissions ⬳21 — Bill showing wherein order of Commission is invalid, unfair, or unreasonable is sufficient.**

A bill attacking an order of the Public Service Commission, which shows wherein order complained of is invalid, unfair, or unreasonable, is sufficient.

**11. Gas ⬳8—Resort to equity for injunction against order of Commission proper.**

Where Public Service Commission denied gas company's petition for permit for additional issue of bonds of public utility, in view of heavy penalties for violation of order, resort to court of equity for injunction was proper.

**12. Public service commissions ⬳6—Propriety of issuance of securities by different public utilities depends on facts in each case.**

Propriety of issuance of securities by public utilities must be determined by Public Service Commission, under Acts Sp. Sess. 1920, p. 38 (Code 1923, § 9744), according to facts and circumstances in each case.

**13. Public service commissions ⬳6—May not exercise rights and powers arbitrarily.**

Public Service Commission, under authority of Code 1923, §§ 9744, 9745, may not exercise its rights, powers, and duties arbitrarily.

**14. Constitutional law ⬳62—Legislature has right to authorize administrative officers and board to make regulations and enforce law.**

Under Const. 1901, § 44, Legislature may authorize administrative officers and board to make necessary rules and regulations and clothe them with administrative powers to enforce provisions of the law.

**15. Gas ⬳8—Bill to enjoin enforcement of order limiting bond issue held not demurrable.**

Where Public Service Commission, on gas company's petition for authority to issue bonds to refund bonds, lawfully issued before state supervision, in payment for properties at their fair value, limited issue to 80 per centum of value of property, bill for injunction to restrain Commission from enforcing its order *held* not subject to demurrer.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by the Mobile Gas Company against the Alabama Public Service Commission and the members thereof, for injunction, etc. From a decree overruling demurrer to the bill, respondents appeal. Affirmed.

Harwell G. Davis, Atty. Gen., and Hugh White, Sp. Asst. Atty. Gen., for appellants.

Regulation of utilities by the commission is within the police power of the state. Ala. Water Co. v. Attalla, 211 Ala. 301, 100 So. 490. The courts have no power to determine when a public utility should or should not be allowed to issue securities. This power rests with the commission, and its orders are final, unless based on some error of law. Cooley's Const. Lim. 139; Thorne v. Cramer, 15 Barb. (N. Y.) 112; Bradley v. Baxter, 15 Barb. (N. Y.) 122; State v. Weir, 33 Iowa, 134, 11 Am. Rep. 115; Ala. L. I. & T. Co. v. Boykin, 38 Ala. 510; Lindsay v. U. S. Co., 120 Ala. 156, 24 So. 171, 42 L. R. A. 783; I. C. C. v. I. C. R. Co., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280; Fall River Gas Co. v. Board, etc., 214 Mass. 529, 102 N. E. 475; Int. T. & T. Co. v. Pub. Utility Board, 84 N. J. Law, 184, 86 A. 363. The statute authorizing the commission to regulate the issuance of securities is valid. Hall v. Geiger-Jones

Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Tanner v. Little, 240 U. S. 369, 36 S. Ct. 379, 60 L. Ed. 691; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; P. & W. V. v. I. C. C., 293 F. 100, 54 App. D. C. 34; R. R. Comm. v. Sou. Pac., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713; R. R. Comm. v. A. N. Ry., 182 Ala. 357, 62 So. 749. The jurisdiction of the commission extends to all securities regardless when made. Code 1923, § 9744; People ex rel. Dry Docks Co. v. Pub. Serv. Comm., 167 App. Div. 286, 153 N. Y. S. 344. The statute is not invalid as denying the citizen the right to alienate property. Allgeyer v. Louisiana, 165 U. S. 591, 17 S. Ct. 427, 41 L. Ed. 832. The trial is not de novo on appeal. Code 1923, § 9676.

Harry T. Smith & Caffey, of Mobile, for appellee.

No statute may constitutionally deny a public utility the right to alienate its property by reason of an order of a regulatory body, enforced by penalties, without provision for suspension of penalties pending an appeal and without provision for judicial review. Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 288, 40 S. Ct. 527, 64 L. Ed. 908. The statute provides for an appeal, and the trial is de novo. Code 1923, § 9835. The courts will review the action of the commission and enjoin imposition of penalties. Ex parte Young, 209 U. S. 193, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Chicago, M. & St. P. R. Co. v. Minn., 134 U. S. 418, 10 S. Ct. 702, 33 L. Ed. 970; Mo. Pac. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 57 L. Ed. 1507. It is not necessary that the opinion of the commission be incorporated in the bill. Williams v. Norris, 12 Wheat. 117, 6 L. Ed. 571; McClung v. Silliman, 6 Wheat, 598, 5 L. Ed. 340; Gibson v. Luther, 196 F. 203, 116 C. C. A. 35. The commission may not deny to the utility the right to extend its mortgage indebtedness created prior to the time the state undertook to regulate in the premises; nor may it arbitrarily deny the right to alienate property or issue bonds for more than 80 per cent. of the value of its properties. Dorman v. State, 34 Ala. 239; Wester v. State, 147 Ala. 123, 41 So. 969; Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832; Toney v. State, 141 Ala. 120, 37 So. 332, 67 L. R. A. 286, 109 Am. St. Rep. 23, 3 Ann. Cas. 319; City of Mobile v. Orr, 181 Ala. 308, 61 So. 920, 45 L. R. A. (N. S.) 575; Tennant v. John Tennant Mem. Home, 167 Cal. 570, 140 P. 242; Gulf Ry. v. State, 56 Tex. Civ. App. 353, 120 S. W. 1028; State ex rel. S. W. Bell. Co. v. Pub. Serv. Comm., 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807; People v. Pub. Serv. Comm., 167 App. Div. 498, 153 N. Y. S. 544;

Delaware & H. Co. v. Stevens, 197 N. Y. 1, 90 N. E. 60.

THOMAS, J. The bill exhibits the mortgage of 1921 under which appellee is prepared to issue bonds, the petition to the Commission for the permit to issue bonds in a certain amount, the grant of the same, and the order of refusal of the subsequent petition for the additional issue. The underlying mortgage of 1910 is not before us. The opinion of the Commission accompanying and referred to in the order, and thus sought to be made a part thereof, is not set out in the bill with the order of the Commission.

[1] The failure to set out the opinion is challenged by demurrer. The assignment of error must be directed to the irregularity or invalidity of an order, judgment, or decree; the question for the appellate court being whether that judgment is correct, not whether the ground upon which it professes to proceed is tenable. McClung v. Silliman, 6 Wheat. 598, 5 L. Ed. 340; Williams v. Norris. 12 Wheat. 117, 6 L. Ed. 571; Davis v. Packard, 6 Pet. 41, 8 L. Ed. 312. Such is the rule in this court. Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490, 493; Alabama Public Service Commission v. Western Union Tel. Co., 208 Ala. 243, 94 So. 472. The better and more convenient practice is to exhibit the opinion with the order, and the agreement of parties to attach the opinion will be observed in the circuit court.

[2] The assignment of error challenging the rendition of the order was sufficient; the many grounds of demurrer were addressed to the right of maintenance of the bill. N. C. & St. L. Ry. Co. v. Blackwell, 201 Ala. 657, 79 So. 129.

The terms of the underlying mortgage are not before us. In its absence, construing the pleading most strongly against the pleader it contained no material contract provisions pertinent to this inquiry as to extension or refunding of said bonds on and after the law day. The fact is adverted to in argument that the mortgage of 1921 contained applicable provisions for the proposed bond issue in sections 6 and 8 of article 1. It provided that the proceeds of the sale of bonds authorized to be used in property additions, acquired or constructed by the company since November 30, 1921, shall not exceed 80 per centum of the actual and reasonable cost of permanent extensions, enlargements, and additions "of and to the property then owned or thereafter acquired by the company, including any additional plant or property acquired by the company, but not including the cost of (1) any shares of stock or bonds or securities, or (2) any improvements or additions necessary for the proper maintenance of the property covered by the lien of this indenture." The provisions of section 8 of article 1, referred to in section 6, are limitations on the right of authentication and de-

livery of bonds under section 6, article 1, providing, among other things:.

"No bonds shall be authenticated and delivered under section 6 of this article (1) unless and until the earnings of the plants and properties of the company, in excess of operating expenses (including in such operating expenses taxes, insurance, and a proper expenditure for or allowance to provide for repairs and maintenance of its plants and property), for twelve consecutive calendar months, ending not more than sixty days prior to the application for the certificate and delivery of such bonds, shall have been not less than one and one-half times the annual interest charge upon (1) all bonds then outstanding under this indenture and those applied for, and (2) all other outstanding indebtedness secured by a lien or liens prior to the lien of this indenture upon all or any part of the mortgaged property."

The mortgage of 1921 recognized the superior lien of the underlying mortgage as being "prior to the lien of this indenture upon all or any part of the mortgaged property." This is shown by provisions contained in section 9, article 1, of the mortgage of 1921. Thus was recognized by the parties to this mortgage the possible necessity of a larger issue than 80 per centum of value that might be incurred as the "cost of (1) any shares of stock or bonds or securities, or (2) any improvements or additions necessary for the proper maintenance" of the property covered by the mortgage. We are not impressed that the action of the Commission may be justified by·such contract provisions of said mortgage.

The police power of the state to reasonably supervise, regulate, and prescribe rates for public utilities has been jealously guarded; it has been held that it may not be abridged or suspended by contract between citizens of the state, or by a municipality and its citizens. Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490; Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372, 39 S. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420.

[3] The authority of the Public Service Commission to regulate the issuance of securities by public utilities is given statement in the act approved October 1, 1920. Gen. and Local Acts, Sp. Sess. 1920, p. 38 et seq. That part of the act which applies to issuance of securities is found as sections 9744-9756 of the Code of 1923, which provide: That the Commission has authority over the issuance, guarantee, or assumption of securities by public utilities (Code, § 9744). That it shall authorize the issue of such securities only when it finds that such issue or assumption (a) is for some lawful object within the corporate purposes of the utility; (b) is compatible with the public interest; (c) is necessary or appropriate for or consistent with the proper performance by the utility of its service to the public as such utility, and will not impair its ability to perform that

service; and (d) is reasonably necessary and appropriate for such purpose. And "the Commission shall specify the purposes for which any such securities or the proceeds thereof may be used by the utility making such application." In the matter of an original issue or assumption of securities by a utility on application to that end, these things must enter into the exercise of the authority vested in the Commission.

The function of the Commission in regulating the issue and assumption of securities by utilities is a part of its general and exclusive powers and jurisdiction to regulate and supervise every utility in respect of its rates, service regulations, etc., its franchises, licenses, and contracts, in so far as they affect said rates and service regulations, and in respect of its financing and securities in accordance with the provisions and subject to the reservations of the Public Utility Act of 1920, and its due administration under the federal decisions and the Constitutions of the state and the United States. Gen. and Local Acts, Sp. Sess. 1920, pp. 38, 40, 45; Code 1923, §§ 9741, 9744–9756. See State v. Goldstein, 207 Ala. 575, 578, 93 So. 308, for authorities; Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490. The powers imposed upon the Commission by the Legislature to regulate public utilities fall within the exercise of the police power —the "least limitable" of the exercise of government.

[4] A statute of the state is tested by the fact whether the enforcement of it abridges the privileges or immunities of citizens of the United States, deprives any person of life, liberty, or property without due process of law, or denies to any person within its jurisdiction the equal protection of the law. Amendment 14, Rights of Citizens, United States Constitution Anno. p. 200. In Hall v. Geiger-Jones Co., 242 U. S. 539, 548, 37 S. Ct. 217, 220, 61 L. Ed. 480, 488, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, the court said, of the necessary limitations of the police power as affecting the rights of persons relative to private property:

"We get no accurate idea of its limitations by opposing to it the declarations of the Fourteenth Amendment that no person shall be deprived of his life, liberty, or property without due process of law, or denied the equal protection of the laws. Noble State Bank v. Haskell, 219 U. S. 104, 110, 55 L. Ed. 112, 116, 32 L. R. A. (N. S.) 1062, 31 Sup. Ct. Rep. 186, Ann. Cas. 1912A, 487. A stricter inquiry is necessary, and we must consider what it is of life, liberty, and property that the Constitution protects. What life is and what may or may not affect it, we have quite accurate tests; and what liberty is in its outside sense, and, in like sense, what property is, We know that it is of the essence of liberty—indeed, we may say, of life—that there shall be freedom of con-

duct, and yet there may be limitations upon such freedom. We know that, in the concept of property, there are the rights of its acquisition, disposition, and enjoyment, in a word, dominion over it. Yet all of these rights may be regulated."

And as to the test of a due administration of the law by state authorities, the Supreme Court of the United States said:

" * * * In determining whether an order of the Commission shall be suspended or set aside, we must consider (a) all relevant questions of constitutional power or right; (b) all pertinent questions as to whether the administrative order is within the scope of the delegated authority under which it purports to have been made; and (c) a proposition which we state independently, although in its essence it may be contained in the previous one, viz., whether, even although the order be in form within the delegated power, nevertheless it must be treated as not embraced therein, because the exertion of authority which is questioned has been manifested in such an unreasonable manner as to cause it, in truth, to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power. Postal Tel. Cable Co. v. Adams, 155 U. S. 688, 698, 39 L. Ed. 311, 316, 5 Inter. Com. Rep. 1, 15 Sup. Ct. Rep. 268, 360. Plain as it is that the powers just stated are of the essence of judicial authority, and which therefore may not be curtailed, and whose discharge may not be by us in a proper case avoided, it is equally plain that such perennial powers lend no support whatever to the proposition that we may, under the guise of exerting judicial power, usurp merely administrative functions by setting aside a lawful administrative order upon our conception as to whether the administratve power has been wisely exercised. Power to make the order, and not the mere expediency or wisdom of having made it, is the question. * * * " Interstate Commerce Commission v. Illinois C. R. Co., 215 U. S. 452, 470, 30 S. Ct. 155, 160, 54 L. Ed. 280, 288.

The case of Fall River Gas Works v. Board of Gas & Electric Light Commissioners, 214 Mass. 529, 102 N. E. 475, is cited by appellants. It will not be necessary to review this case at length. It collects the authorities and reviews the history of such legislation in that state for the issue of stocks and securities by public service corporations. However, the instant statutes are different from that in Massachusetts in the provision for a retrial of the facts in a court of equity in Montgomery county.

[5] Though a void order may be disregarded and challenged in a collateral proceeding —as for punishment or for the collection of penalties imposed by statute for disobedience —because of the heavy penalties imposed for a disregard or failure to obey a valid order and the ruinous results which may follow, it is held necessary that a method be provided by law to test the validity of such order. In this way only unseemly conflicts of jurisdictions and ruinous consequences of a bona fide

attempt to test such order may be avoided. The distinctions between direct and collateral attacks on judgments and decrees need not now be pursued. Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490; Hamilton v. Tolley, 209 Ala. 533, 96 So. 584; Miller v. Thompson, 209 Ala. 469, 96 So. 481; Edmondson v. Jones, 204 Ala. 133, 85 So. 799, for authorities; Acklen v. Goodman, 77 Ala. 521; Martin v. Hall, 70 Ala. 421; Alexander v. Nelson, 42 Ala. 462. It is sufficient to say that it is declared by the federal courts that it is essential to the validity of a statute and its due administration under the Constitution, where there is given the right of a reasonable supervision of public utilities to a state board, commission, or agency of government exercising legislative functions, that the same be "regulated by law"; and the courts must be left open to that end. Alabama Public Service Commission v. Western Union Tel. Co., 208 Ala. 243, 94 So. 472. As to this, Mr. Justice Hughes said:

"It is insisted that the failure to provide for an appeal to any court from the final order of the Commission, or for a judicial review of the reasonableness of the prescribed rates before they become effective, makes the statute void. But the statute does not deny to the carrier the right of access to the courts for the purpose of determining any matter which would be the appropriate subject of judicial inquiry. We have not been referred to any decision of the state court holding that the statute should be so construed. * * * If the Commission establishes rates that are so unreasonably low as to be confiscatory, an appropriate mode of obtaining relief is by bill in equity to restrain the enforcement of the order. * * * Presumably, the courts of the state, as well as the federal courts, would be open to the carrier for this purpose * * * without express statutory provision to that effect. In answer to the present objection, it is sufficient to say that there is no showing here of an attempt to preclude such resort to the courts, or to deny to the carriers the assertion of its rights, unless it can be found in the severity of the penalties attached to disobedience of the order. And, if it were assumed that these would be open to objection as operating to deprive the carrier of a fair opportunity to contest the validity of the Commission's action, still the penal provisions would be separable, and the force of the remaining portion of the statute would not be impaired. * * * " Louisville & N. R. Co. v. Garrett, 231 U. S. 298, 310, 34 S. Ct. 48, 53, 58 L. Ed. 229, 241, 242; St. Louis, I. M., & S. Ry. Co. v. Williams, 251 U. S. 63, 40 S. Ct. 71, 64 L. Ed. 139; Oklahoma Operating Co. v. Love, 252 U. S. 337, 40 S. Ct. 338, 64 L. Ed. 596; Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908.

In Oklahoma Operating Co. v. Love, 252 U. S. 337, 40 S. Ct. 338, 64 L. Ed. 596, the provisions of a statute providing penalties for the enforcement of rates fixed by the Commission were held to violate the Fourteenth Amendment to the Constitution of the United

States, because the only judicial review of such order possible under the statutes of that state "is that arising in proceedings to punish for contempt, in which the penalties imposed for refusal to obey" may be $500 for each offense for each day's continuance of refusal or failure to obey the order "constituting a separate offense."

In Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 289, 40 S. Ct. 527, 528, 64 L. Ed. 908, 914, the Supreme Court of the United States said, of the opinion of the Supreme Court of Pennsylvania:

"Looking at the entire opinion, we are compelled to conclude that the Supreme Court interpreted the statute as withholding from the courts power to determine the question of confiscation according to their own independent judgment when the action of the Commission comes to be considered on appeal. The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. * * * In all such cases, if the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment. * * * Here the insistence is that the Public Service Company Law, as construed and applied by the Supreme Court, has deprived plaintiff in error of the right to be so heard; and this is true if the appeal therein specifically provided is the only clearly authorized proceeding where the Commission's order may be challenged because confiscatory. Thus far plaintiff in error has not succeeded in obtaining the review for which the Fourteenth Amendment requires the state to provide."

[6, 7] The constructions given such statutes by this court (Alabama Public Service Commission v. Western Union Tel. Co., 208 Ala. 243, 94 So. 472), and the specific terms of the statute, are sufficient as affording due process under the Fourteenth Amendment to the Constitution of the United States (Code 1923, §§ 9675, 9676, 9679, 9699, 9701, 9809, 9831, 9835, 9843).

The purpose of the present bill was to try and "contest the validity or fairness or reasonableness" of the order of the Commission in a court of equity upon all of the relevant and material facts, preparatory to an appeal to this court for a final ascertainment of its validity and duty vel non of obeyance. Alabama Public Service Commission v. Western Union Tel. Co., 208 Ala. 243, 94 So. 472. Under the Constitutions and the decisions of the Supreme Court of the United States, the test of validity applied is whether, on the relevant and material facts and circumstances presented and duly considered, the order is reasonable or unreasonable, uniform or arbitrary, in its due administration or operation as to complainant and its contract obligations and its exercise of the right of

disposition or alienation of its properties. In article 4 (volume 4, Code 1923), § 9675, is provided the right to institute an action to contest (1) rate or rates, or (2) order or orders of the Commission, fixing or relating to rates or charges, or any order relating thereto, or (3) any order fixing any regulations, practices, or services or acts to be observed or performed by such companies, corporations, or persons, by filing (section 9676) a complaint or bill or petition in the circuit court of Montgomery county, or other court in said county having concurrent jurisdiction, making the Commission "defendant therein, and alleging wherein the rate or rates or order or orders complained of are invalid or unfair or unreasonable," and providing that—

"Said cause shall have precedence over any other cause pending in said court, except criminal causes, and shall be tried under the same rules and regulations as are or may be prescribed by law for the trial of other civil or chancery suits in said court, except as may otherwise be provided in this Code, and except that the rates or orders complained of shall be prima facie presumed to be valid, fair, and reasonable."

Thus was a trial de novo provided upon the facts. Then follows procedure for judgment and costs. Sections 9677, 9678. In article 5 are contained provisions for appeal to the Supreme Court by either party within 30 days from the rendition of the judgment or decree (section 9679), for the nature of the judgment to be rendered here on appeal "in all suits" to "contest the validity or fairness and reasonableness of *any rate or order* [italics supplied] of the Public Service Commission" (section 9699); and for appeal from mandatory injunctions (section 9701). Thus the respective statutory provisions contained in articles 4 and 5 are treated in the context as being in pari materia. Necessarily, this was the fact. The provisions of sections 9675 and 9676 of the Code were broad enough to embrace every order, judgment, or decree of the Commission. Article 6 deals with penalties against common carriers or transportation companies. Sections 9704–9706. Article 7 deals with the control and regulation by the Commission of transportation companies. Sections 9707–9739. Article 8 deals with control and regulation by the Commission of "public utilities other than transportation companies." Sections 9740–9824. The provision for appeal contained in this article is in section 9809, which reads as follows:

"From any final action or order of the Commission in the exercise of the jurisdiction, powers and authority conferred upon the Commission by this article, an appeal shall lie to the circuit court of Montgomery county, sitting in equity and thence to the Supreme Court of Alabama. * * *"

Article 9 has to do with the sale or lease of properties and franchises of public utilities. Section 9825 et seq. Article 10 has as its subject "appeals from orders of public service commission." Sections 9831–9845. In this article (10) are contained sections 9831, 9835–9843, and 9844 of the Code, as codification of the Act of August 19, 1909 (Acts 1909, p. 96), expressing in the title to the act the authority for "appeals from any action or order of the Railroad Commission of Alabama reducing or increasing or refusing to increase any rates, fares or charges by common carriers for the transportation of property, freight or passengers, specifically prescribed by statute, or made the maximum rates by statute, or established by the railroad commission." It must be noted that the provisions of sections 9831–9845 of the Code are limited to the subjects embraced by the Act of August 19, 1909, supra. The trial de novo and appeal to this court had theretofore been provided in all matters. The recodification as to retrial in the circuit court upon appeal did not limit the former statutes as to a different class of orders.

[8, 9] For the purposes of this bill—having for its object the contesting of the validity of the Commission's order—the provisions of the statute are ample (Code 1923, §§ 9675, 9676, 9679, 9699, 9701, 9809) to contest the validity of said order in the circuit court; and such suit is deemed commenced and instituted when the bill is filed and the material and relevant facts are averred. Thereafter a trial of such issues is to be de novo; it being provided that such issues shall be tried "under the same rules and regulations as are or may be prescribed by law for the trial of other civil or chancery suits in said court, except as may otherwise be provided," etc. Section 9676. After the bill is filed in such cause, that court will thereafter conform to the reasonable rules, regulations, and procedure prescribed by law for the trial of civil suits in equity, to the end that the respective insistences may be duly presented, that under the material and relevant circumstances the determination may be whether the order is valid or unlawful, reasonable or unreasonable, uniform or arbitrary, according to the law and due process required in the premises. Alabama Public Service Commission v. Western Union Tel. Co., 208 Ala. 243, 94 So. 472; Railroad Commission v. Alabama Northern Ry. Co., 182 Ala. 357, 62 So. 749; Mississippi Railroad Commission v. M. & O. R. Co., 244 U. S. 388, 37 S. Ct. 602, 61 L. Ed. 1216.

[10] If, when the instant bill is considered fully and fairly, it presents the issue indicated and shows wherein the order complained of "is invalid or unfair or unreasonable," it is sufficient, the same as if the words of the statute were employed by the pleader. Alabama Power Co. v. Stogner, 208 Ala. 666, 95 So. 151; Burton & Sons Co. v. May (Ala. Sup.) 103 So. 46.[1] If in the trial in the circuit court it be deemed advisable, the rules of amendment may be adverted to, making more specific the purpose of the proceeding. We deal with this case as under the rule of a general demurrer directed to the right of maintenance of the bill.

[11] Adverting to the statute, with its heavy penalties for a violation of an order of the Commission such as that questioned by this bill, and the right under the federal authorities to resort to the courts for injunction to preserve the status quo and avoid the disastrous effect of the penalties until the validity of the order may be established according to the law and facts, a resort in this case to a court of equity was proper. Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 289, 40 S. Ct. 527, 64 L. Ed. 908, 914; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596, 598; Wadley Southern Ry. Co. v. Georgia, 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405; Missouri Pac. Ry. Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 57 L. Ed. 1507; Chicago, B. & Q. R. Co. v. Cram, 228 U. S. 70, 33 S. Ct. 437, 57 L. Ed. 734; Ex parte Young, 209 U. S. 123, 193, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 S. Ct. 462, 702, 33 L. Ed. 970.

The present ruling sought to be reviewed is whether, under the material facts of this case, the Commission had the right to restrict alienation by mortgage, as it did, to eighty per centum of the value of the company's properties to obtain funds for the payment of debts secured by the underlying mortgage of January 1, 1910. The arguments proceed on the assumption that said debts were incurred in the purchase of the company's plants before the state had undertaken the regulation of such public utilities. The averment of the bill is that the proceeds of said bonds went into the purchase of appellee's plants, as follows:

"And your orator further shows unto your honors that the said indebtedness which is evidenced by said bonds, which matured on the 1st day of January, 1924, was created by this company in the acquisition of the property which is now devoted to the public service of the citizens of Mobile, and that said indebtedness was created long prior to the time when the Alabama Public Service Commission had any jurisdiction whatever over the said subject-matter, and long before the state of Alabama had assumed any regulation of such matters, and neither the state of Alabama, nor any of its agencies, have any legitimate power to force your orator to continue to devote the said properties which were in part acquired by the use of said money which had been borrowed upon the faith of its repayment being secured by a first mortgage bond."

[1] 212 Ala. 435.

[12] The courts appreciate that the propriety of the issuance of securities by different public utilities will depend upon the facts in each particular case, and that no other classification is possible in the very nature of the subject-matter. The financial condition of no two utilities is exactly the same, and whose ability to issue securities with justice to itself, the rate-paying public, and the prospective purchasers of the securities to be issued, would be the same. Such diversity of circumstances will always be presented and must be dealt with on their own merits. The Interstate Commerce Commission, in the exercise of its jurisdiction over the issue of securities by railroads, determines each case upon its peculiar facts and circumstances found to be material and relevant. That Commission receives its jurisdiction under statutory provisions for extensions, abandonments, etc. (41 U. S. Stat. at L. pp. 456, 477 [U. S. Comp. St. Ann. Supp. 1923, § 8563 et seq.]), and for the issue of securities (41 U. S. Stat. at L. p. 494, § 439 [2], being U. S. Comp. St. Ann. Supp. 1923, § 8592a), which are similar to the provisions of the Alabama statute (Acts, Sp. Sess, 1920, p. 38; Code 1923, § 9744), which confers jurisdiction upon the Commission as to the issuance or guarantee of securities by utilities on application. It is plain that there is no basis in law for an insistence that the Commission is not warranted to determine each application for permission to issue or guarantee securities upon the facts of that particular case. Hence we may not trouble with authorities defining reasonable classifications in statutes and ordinances. Ex parte Smith, 102 So. 122;[2] Woco Pep Co. v. City of Montgomery, 105 So. 214;[3] B. R., L. & P. Co. v. Kyser, 203 Ala. 121, 82 So. 151; City Council of Montgomery v. West, 149 Ala. 311, 42 So. 1000, 9 L. R. A. (N. S.) 659, 123 Am. St. Rep. 33; City of Talladega v. Sims, 8 Ala. App. 471, 62 So. 958. It follows, therefore, that the question presented in this particular case is the reasonable exercise of the police power under the relevant and material facts and circumstances entering into the right of alienation sought.

[13] If the Commission had the power, under sections 9744, 9745, of the Code, to the full extent as contended, (1) may it limit the issue of all bonds of said public utility (whatever the necessity or purpose of the issue) to 80 per centum of the fair value of the company's physical properties and assets, or (2) should it take due consideration of the fact that its purpose and necessity was for the refunding of other bonds secured by the underlying mortgage, and for the payment of a valid debt incurred in the original purchase of its properties now being employed as a public utility? It may not exercise arbitrarily the rights, powers, and duties imposed by the statute. Code, §§ 9744, 9745; City Council of Montgomery v. West, 149 Ala. 311, 42 So. 1000, 9 L. R. A. (N. S.) 659, 123 Am. St. Rep. 33, 13 Ann. Cas. 651; Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490, 469; Woco Pep Co. v. City of Montgomery, post, p. 452, 105 So. 214.

We may observe that, whether the bonds sought to be refunded are secured by the underlying mortgage of 1910, as averred in the bill, are such as draw to them the right of the underlying mortgage, or have been purchased or discharged under such circumstances as to subrogate the holder thereof to the rights of the first mortgage (Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Hope of Alabama Lodge v. Chambless [Ala. Sup.] 103 So. 54[4]), or whether the proceeds of the sale of the proposed bonds are to be devoted to the retirement of the bonds secured by said underlying mortgage, or that indebtedness was incurred in capitalization or purchase of said properties and plants now in use, are questions of fact which may be further illuminated by the evidence on the trial in the circuit court in equity, and which trial will be de novo. The Commission proceeds on the assumption that the proposed application "is in substance and effect *a refunding application*" (italics supplied); that, if it be a fact "that the original bond issue, part of which is sought to be refunded," "was made long prior to any jurisdiction by this Commission of its issuance," the Commission finds that "petitioners have not furnished evidence to show that the original securities were issued for a capital purpose."

The conclusion of the Commission is founded, as we observe from brief of its counsel, upon authorities cited in its opinion, to wit: Re New York & R. Gas Co. (N. Y.) P. U. R. 1918F, 439, 446; People ex, rel. Dry Dock, etc., Co. v. Public Service Commission, 167 App. Div. 286, 308, 153 N. Y. S. 344; Re United G. & E. Co. (Ind.) P. U. R. 1918E, 311, 319, 321. And, concluding, the Commission says: "We cannot and will not assume that this was a fact"—the issue for a capital purpose. We may add that if such is the fact it should have been shown on the trial in the first instance. However, under our statute authorizing its introduction on the trial in the circuit court, this additional and other material facts may be shown.

The debt, being valid and binding, is subject to judgment, and its liens subordinated to that of the underlying mortgage. The failure of its payment may precipitate execution or foreclosure, or repossession of the property after the law day. Wood v. Barnett, 208 Ala. 295, 299, 94 So. 338. The right of the debtor to pay within the law is not defeated by his intent to defraud other creditors. Carter Bros. & Co. v. Coleman, 84 Ala. 256, 4 So. 151; Meyer v. Sulzbacher, 76

---

[2] 212 Ala. 262.        [3] Post, p. 452.        [4] 212 Ala. 444.

Ala. 120; Most Worshipful Grand Lodge v. Allen, 208 Ala. 292, 94 So. 343, 28 A. L. R. 1043. This petitioner debtor, being unable to pay, arranges for an extension of its debt by the issue of refunding bonds within the fair market value of its properties and its earning · capacity.

The Commission says, in its opinion:

"* * * We hold that, under the law of this state, it is not compatible with the public interest that the outstanding stock and bonds of a public utility should exceed the fair value of its property. In the present case, in view of the provisions of said deed of trust under which said bonds are proposed to be issued, we do not think we could consistently authorize any additional issue of bonds, if the outstanding bonds equal or exceed what, in our judgment, is 80 per cent. of the fair ·value of such property."

The Constitution of Alabama, in section 234, treats stocks and bonds alike. The issue of additional stock by private corporations, based on the fair valuation of their surplus assets, was justified in Fitzpatrick v. Dispatch Publishing Co., 83 Ala. 604, 2 So. 727, approved in Randle v. Winona Coal Co., 206 Ala. 254, 89 So. 790, 19 A. L. R. 118, and discussed in Riles v. Coston-Riles Lbr. Co., 208 Ala. 508, 95 So. 43, as to payment of subscriptions to capital stock by conveyance of properties. These decisions touched a right of ownership in corporate property and its disposition within the law to the end of re-issue of stock, payment of subscriptions for stock, and stock dividends.

Before the adoption of the Fourteenth Amendment to the Constitution of the United States on July 28, 1868, the Supreme Court of this state made a memorable pronouncement on the right of the use and alienation of private property, and in the conduct of a business without unreasonable and unnecessary limitations. Dorman v. State, 34 Ala. 216, 239. This decision has been followed in this jurisdiction. Wester v. State, 147 Ala. 121, 41 So. 969; State v. Goldstein, 207 Ala. 569, 93 So. 308, for authorities; Toney v. State, 141 Ala. 120, 37 So. 332, 67 L. R. A. 286, 109 Am. St. Rep. 23, 3 Ann. Cas. 319; Board of Commissioners, City of Montgomery, v. Orr, 181 Ala. 308, 61 So. 920, 45 L. R. A. (N. S.) 575.

In Dorman's Case, supra, it was said:

"It has been said that an act of the Legislature, prohibiting entirely the sale of an article whose commercial value depends mainly on its vendible quality, would, in the sense of the Constitution, deprive a citizen then owning it of his property without due course of law. The line of argument by which this conclusion is reached may be thus stated: The term 'property,' although frequently applied to the thing itself, in strictness means only the rights of the owner in relation to it; and these are the rights of use, enjoyment, and disposal. These essential characteristics enter into every legal notion of property, and any article or thing eliminated of these attributes ceases to be property." 

An important expression in Allgeyer v. Louisiana, 165 U. S. 578, 591, 17 S. Ct. 427, 432, 41 L. Ed. 832, 836, is:

"In the privilege of pursuing an ordinary calling or trade and of acquiring, holding, and selling property must be embraced the right to make all proper contracts in relation thereto, and, although it may be conceded that this right to contract in relation to persons or property, or to do business within the jurisdiction of the state, may be regulated and sometimes prohibited when the contracts or business conflict with the policy of the state as contained in the statutes, yet the power does not and cannot extend to prohibiting the citizen from making contracts of the nature involved in this case outside of the limits and jurisdiction of the state, and which are also to be performed outside of such jurisdiction; nor can the state legally prohibit its citizens from doing such an act as writing this letter of notification, even though the property which is the subject of the insurance may, at the time when such insurance attaches, be within the limits of the state. The mere fact that a citizen may be within the limits of a particular state does not prevent his making a contract outside its limits while he himself remains within it. Milliken v. Pratt, 125 Mass. 374 [28 Am. Rep. 241]; Tildon v. Blair, 88 U. S. 21 Wall. 241 [22: 632]. The contract in this case was thus made. It was a valid contract, made outside of the state, to be performed outside of the state, although the subject was property temporarily within the state."

From a consideration of the cases, state and federal, it is established that the right to sell (Dorman v. State, 34 Ala. 216, 234; State v. Mattox Cig. & Tob. Co., 201 Ala. 229, 77 So. 755; Southern Exp. Co. v. Whittle, 194 Ala. 406, 69 So. 652, L. R. A. 1916C, 278; Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480; Purity Ext. Co. v. Lynch, 226 U. S. 192, 33 S. Ct. 44, 57 L. Ed. 184; Clark Dist. Co. v. West. Md. Ry. Co., 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205—as to prohibiting the manufacture, sale, or other disposition of liquors, whether intoxicating or not, in connection with prohibitive liquor statutes), and the right to refuse to sell, is qualified and may be properly limited in the public interest. Federal Trade Com. v. Beechnut Pkg. Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882. Of the correctness of this statement there is authority, as:

"It would be idle and trite to say that no right is absolute." Orient Ins. Co. v. Daggs, 172 U. S. 557, 566, 19 S. Ct. 281, 284, 43 L. Ed. 552.

"No conduct has such an absolute privilege as to justify all possible schemes of which it may be a part." Aikens v. Wisconsin, 195 U. S. 194, 206, 25 S. Ct. 3, 6, 49 L. Ed. 154.

"The word 'right' is one of the most decep-

tive of pitfalls; it is so easy to slip from a qualified meaning in the premise to an unqualified one in the conclusion. Most rights are qualified." Am. Bank & Tr. Co. v. Fed. Res. Bank, 256 U. S. 350, 41 S. Ct. 449, 65 L. Ed. 983.

"Who are to settle the principles of eternal justice and define the limits of so vague a thing as natural right?" is the question on which the argument in Dorman v. State, supra, proceeded.

Thus is emphasized the difficulties in defining and administering the police power as affecting private property. And no court has sought to announce a complete or all-comprehensive definition of the police power, preferring to leave the application of that power to the material and relevant facts adduced in each particular case.

We are brought to a consideration of the several authorities cited by counsel. It may be observed that the general authorities are collected in 5 A. L. R. 66, 68, to the effect that statutes creating public service commissions, or like governmental agencies or bodies, and conferring on them the power to supervise and control the construction and operation of public utilities, generally provide that such commission or body shall have control over the issuance and assumption of bonds and other securities thereof. Augusta T. Co. v. Fed. T. Co., 153 F. 157, 88 C. C. A. 309; Guaranty Co. v. Metropolitan Co. (C. C.) 180 F. 637; Federal Co. v. Bristol Co., 222 Mass. 35, 109 N. E. 880; K. C. R. Co. v. Public Service Com., 273 Mo. 173, 201 S. W. 74; People ex rel. T. A. R. Co. v. Public Service Com., 203 N. Y. 299, 96 N. E. 1011; People ex rel. Westchester Co. v. Public Service Com., 210 N. Y. 456, 104 N. E. 952, modifying 158 App. Div. 251, 143 N. Y. S. 148; People ex rel. Dry Dock, etc., Co. v. Public Service Com., 167 App. Div. 286, 153 N. Y. S. 344.

In People ex rel. Westchester v. Public Service Commission, 210 N. Y. 456, 459, 104 N. E. 952, the court said the purchase price of the property in the open market is generally entitled to great weight in determining the value of such property, but such purchase price is not conclusive evidence of value, "and determination of such amount does not prevent the consideration of other evidence bearing upon the value of the property purchased."

Hillsdale Light & T. Co. v. Michigan Public Util. Com., 220 Mich. 101, 189 N. W. 893, proceeds on the assumption that Peninsular Power Co. v. Secretary of State, 169 Mich. 595, 135 N. W. 656, was decisive of the Hillsdale Case. The subject-matter was the consideration of an order granting the right to a nonresident corporation to do business in that state, and hence it must comply with the statutes to that end. In the Michigan Case the declared purpose of the statute was to prevent overcapitalization, and it was said the "amount of its capital stock and bonds should correspond with the value of its property; therefore the Commission had the right to fix the amount of the issue of stock and bonds" to be issued at the value of its property.

In People ex rel Dry Dock, etc., Co. v. Public Service Commission, 167 App. Div. 286, 153 N. Y. S. 344, is declared the right of the Commission to refuse to permit the issuance of bonds to refund an old valid bonded indebtedness, unless it be shown that the same was a "capital charge" as distinct from operating or income charges. The decision follows the statute of that state without considering its constitutionality as unreasonably denying the right of alienation on payment of debts to be paid under such circumstances as not to be a fraud on the rights of other creditors. However, it was there declared that the Commission erred in applying the test of the actual value of a street railway company's property and its earning capacity as a criterion for its approval of the issue of bonds for the purpose of "refunding existing debts and obligations, but that it was right, as we have indicated," in refusing to approve the issue until "it had been proved that the securities to be refunded represented actual investment" for the company's capital account. It was declared that in a refunding case the inquiry of the Commission is properly directed to the following considerations, and that the evidence requisite to reach a determination thereupon should be furnished by the petitioner: (1) Whether the proposed issue is reasonably required for the refunding purpose; (2) whether the expenditure to be refunded is a capital, as distinct from an operating or income, charge; (3) if the expenditure to be refunded is an operating or income charge, whether such refunding should nevertheless be permitted under the exception clause of the statute, which reads, "Except as otherwise permitted in the order in the case of bonds."

The opinion in the Dry Dock Case, supra, recognized the fact that the Commission had no right to substitute itself, in all respects, as the owner of the property in the determination of its disposition or alienation. This last proposition was reannounced in Missouri ex rel. Southwestern Co. v. Service Commission of Missouri, 262 U. S. 276, 43 S. Ct. 544, 547, 67 L. Ed. 981, 31 A. L. R. 807. This decision was again adverted to in Re Dry Dock, etc., Co., P. U. R. 1916D, 553, 568, 571, and the former order was modified so as to increase the amount of bonds that may be applied for to meet the necessities of refunding, and not "beyond the value of the property subject to them, or under such circumstances that it could not reasonably be anticipated that the interest thereon would be paid."

In Re Richmond L. & R. Co. (N. Y.) P. U. R. 1917D, pp. 807, 812, 814, it is announced that essential requisites to be met in addi-

tion to the validity of the debt are the reasonable requirements for the refunding purpose, whether the expenditure to be refunded is a capital (and not an operating or income) charge, and, if an operating or income charge, whether refunding "should nevertheless be permitted under the exception clause of the statute which reads, 'Except as otherwise permitted in the order in the case of bonds' "; and on the authority of People ex rel. Binghampton L. H. & P. Co. v. Stevens, 203 N. Y. 7, 25, 96 N. E. 114, and People ex rel. Dry Dock, etc., Co. v. Public Service Commission, 167 App. Div. 286, 308, 309, 153 N. Y. S. 344, it was said, in the Richmond Case, supra, that it was the settled policy of New York under its statute that the Commissioners in their duty of protecting the public "can and must determine, before they give their consent to the issue of refunding securities, that the purposes for which the original securities were to be issued were strictly capital purposes, and not expense or operating purposes." See, also, 5 A. L. R. 66, 68.

In Re New York & R. G. Co. (N. Y.) P. U. R. 1918F, 439, 446, upon a refunding application, the important question was whether the original securities were issued for a capital purpose, rather than the value of the property or the amount of the consideration acquired by the issue of the obligation to be refunded. It was declared the burden of proving the same was upon the petitioner.

In Re United G. & E. Co., P. U. R. (Ind.) 1918E, 311, 320, the conclusions announced were: (1) Bonds will not be authorized to "cover an excess of capital expenditures over previous issues of bonds on mere evidence of capital expenditures over a period of years and of bond issue for the same period," since this is not a compliance with statute requiring that accounts and vouchers of such expenditures be kept to inform the Commission; (2) that refunding bonds "should not be authorized without regard to the value of the property securing them" merely for the reason that, being for refunding, they do not create new obligations; (3) refunding bonds will not be authorized "where the bonded indebtedness" exceeds the value of the property, notwithstanding the provisions of statute authorizing the utility to issue bonds for the purpose of lawfully discharging or refunding its obligations. It is further declared that this result followed "especially where there is no evidence to warrant a finding that the existing obligations are for money borrowed to retire bonds, and where the Commission is unable to tell whether the expenditures were those for which bonds can be issued." The court observed: "There is no showing in the evidence of an emergency, or of danger to vital interest of the petitioner." See, also, Pittsburgh, etc., Co. v. Interstate Commerce Commission, 293 F. 1001, 1004, 1005, for opinion of the Court of Appeals of the District of Columbia, sustaining act of Congress providing for the supervision of issuance of stock, the incurring of bonded indebtedness, the extension and consolidation of railway lines, as a part of the general scheme of regulation which Congress deemed essential to the establishment of a new federal railway policy and pursuant to constitutional sanction.

The case of Railroad Commission of California v. Southern Pacific Co., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713, involved an order requiring the transportation companies to build an interstate union depot in the city of Los Angeles. The railway company sought to review the same in the Supreme Court of that state; held, the order was beyond the powers of the State Railroad Commission, because the subject-matter was committed by Congress to the Interstate Commerce Commission by Transportation Act of 1920. Volume 41, U. S. Stat. at L. p. 456 et seq. § 439 (U. S. Comp. St. Ann. Supp. 1923, § 8592a). However, Mr. Chief Justice Taft said of the general powers contained in section 439:

"The purpose of Congress to prevent interstate carriers from incurring expense which will lessen their ability to perform well their interstate functions is further shown in section 439 of the Transportation Act, whereby the Interstate Commerce Act is amended by insertion of section 20a. This new section subjects to the approval or rejection of the Interstate Commerce Commission the issue by an interstate carrier of all future shares of stock, bonds, or other evidence of indebtedness, and forbids approval unless the Commission shall find that their issue is for a lawful purpose, is compatible with the public interest, is appropriate and necessary to the discharge of its public duty as a common carrier, and will not impair its ability to perform that service. That is of course in pari materia with the restriction of paragraph 21 of section 402 to prevent a possible impairment of the financial ability of interstate carriers to discharge their interstate commerce duties."

In Dayton, etc., Co. v. United States, 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472, it was said that the powers of the Transportation Act seek—

"affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country. It aims to give the owners of the railways an opportunity to earn enough to maintain their properties and equipment in such a state of efficiency that they can carry well this burden. To achieve this great purpose, it puts the railroad systems of the country more completely than ever under the fostering guardianship and control of the Commission, which is to supervise their issue of securities, their car supply and distribution, their joint use of terminals, their construction of new lines, their abandonment of old lines, and by a proper division of joint rates, and by fixing adequate rates for interstate commerce, and, in case of discrimination for in-

trastate commerce, to secure a fair return upon the properties of the carriers engaged."

In the light of the foregoing from the Supreme Court of the United States relative to the Transportation Act of 1920, there can be little doubt what that court would say in reply to any attack that might be made against the validity and constitutionality of the securities provisions of such Transportation Act. The securities provisions of the Alabama statute were no doubt taken from like provisions of the Transportation Act. If these provisions of the federal act are valid under the federal Constitution, the securities provisions of the Alabama Public Utility Act of 1920, rightly administered, are also valid under the state Constitution and under the federal Constitution. The provisions are practically identical, and they deal with subject-matter that is in law identical, in so far as the power of the government to regulate is concerned. The act of Congress is of date February 28, 1920; that of our statute is October 1, 1920.

[14] Appellee argues for a due classification and general rules as to the issue or assumption of bonds as related to the fair value of the properties of the utility. Reference in argument is made to State v. Great N. R. R. Co., 100 Minn. 445, 111 N. W. 289, 10 L. R. A. (N. S.) 250. If that case is correctly decided, it is not of controlling force. It in fact held that the Minnesota Legislature had passed a law that, in the opinion of the Supreme Court, undertook to give the Railroad Commission "power to legislate" and not merely "to find the facts" and declare a rule in the premises to which the law would give effect. Whatever the effect of this decision may be, under the Constitution of the United States (article 1, § 1, U. S. Const. Ann. p. 1) and of the state (section 44), the right to legislate is with the legislative department of government; and that department has the power to authorize administrative officers and boards created by it to make necessary rules and regulations, and to clothe them with administrative powers "to enforce the provisions of a law." Union Bridge Co. v. United States, 204 U. S. 364, 381, 383, 27 S. Ct. 367, 51 L. Ed. 523, 532; Louisville Bridge Co. v. United States, 242 U. S. 409, 424, 37 S. Ct. 158, 61 L. Ed. 395, 403. See Johnson v. Craft, 205 Ala. 407, 87 So. 375, for authorities; Railroad Commission v. Alabama Northern Ry. Co., 182 Ala. 357, 62 So. 749; Railroad Commission v. A. G. S. R. R. Co., 185 Ala. 354, 358, 64 So. 13, L. R. A. 1915D, 98. It is held, under the Alabama statute empowering the Commission to determine whether a proposed sale, conveyance, lease, etc., of a public utility is consistent with the interest of the public, not subject to the objection made—delegation of legislative power—and that, while the Legislature cannot delegate its power to make law, it can make a law to delegate a power to a commission, board or governmental agency to determine some fact or state of things on which the law makes, or intends to make, its use depend (for authorities see Johnson v. Craft, 205 Ala. 386, 407, 87 So. 375). Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51.

[15] It was then for the Commission, and is now for the circuit court, to ascertain the relevant and material facts of the particular application, and apply thereto the law in such manner as may not be said in this and the federal jurisdictions to be arbitrary, unreasonable, or lacking in the quality of uniformity; that is, section 9744 of the Code of 1923 will be thus administered in dealing with the refunding of bonds (lawfully incurred before state supervision) issued for a "capital purpose," and which went into and are represented in the purchase of the company's existing properties at their fair value. In so doing, a due regard must be had for the "showing of emergency" in the premises, and the "danger to vital interests of petitioner" that may follow a denial of the petition, as well as reference to the fair value of petitioner's properties.

We are fearful that the limitation of the issue to an 80 per centum of value, as finds expression concerning the purposes indicated in section 6 of the second or refunding mortgage of 1921, has been given by the Commission application to facts that may not be regulated thereby, independent of the relevant and material facts entering therein.

The demurrer challenging the right of maintenance of the bill in the Montgomery circuit court, in equity, is found to have been properly overruled.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

